

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 15-41557** |
| ARMADA MIDCONTINENT, LLC, | § | |
| | § | **CHAPTER 7** |
| DEBTOR. | § | |

### ORDER (i) AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (ii) GRANTING RELATED RELIEF

On this 2 day of November, 2015, there came before this Court the Sale Motion,[1] filed on October 23, 2015, by Linda Payne, the duly appointed Chapter 7 Trustee (the "Trustee") of the estate of Armada Midcontinent, LLC, (the "Debtor"), pursuant to Section 363 of Title 11, United States Code, 11 U.S.C. §§ 101 et seq., (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking the entry of an order (i) authorizing and approving the sale of substantially all of the assets of the Debtor's estate consisting of the Sale Assets[2] pursuant to the terms and conditions of that certain Asset Purchase Agreement, dated October 22, 2015 (the "Agreement"),[3] by and between the Trustee and John E. Galemore, which was subsequently assigned to and assumed by Laymon Oil II, LLC, a Kansas limited liability company (the "Successful Bidder") pursuant to the terms and conditions of that

---

[1] The "Sale Motion" shall mean the Emergency Motion for Order (i) Authorizing And Approving The Sale Of Substantially All Of The Debtor's Assets Free And Clear Of All Liens, Claims, Encumbrances, And Other Interests, And (ii) Granting Related Relief.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Sale Motion. To the extent that such capitalized terms have not been defined in the Sale Motion, such terms shall have the meanings set forth in the Agreement (as defined below).

[3] A true and correct copy of the Agreement, together with attachments thereto, is attached hereto as "Exhibit A", and is incorporated herein for all purposes; "Exhibit B" to the Agreement has been amended to reflect additional acceptable changes requested by the Successful Bidder. To the extent there is a conflict between the terms and conditions of the Sale Motion and the Agreement, the terms and conditions of the Agreement shall govern. To the extent there is a conflict between the terms and conditions of the Agreement and the Sale Order, the terms and conditions of the Sale Order shall govern.

certain Assignment and Assumption of Asset Purchase Agreement, dated October 23, 2015 (the "Assignment and Assumption Agreement)[4], free and clear of all liens, claims, encumbrances, and other interests, and (ii) granting such other related relief as stated in this Order (this "Sale Order"); and it appearing that due notice of the Sale Motion was given; and such notice being good and sufficient; and a hearing (the "Sale Hearing") to consider approval of the Sale Motion having been held on November 2, 2015; and upon the record made at the Sale Hearing; and after due deliberation and sufficient cause appearing therefor, this Court granted the relief set forth in the Sale Motion, subject to the terms of this Sale Order, and made such findings of fact and conclusions of law as set forth below.

        A.     This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Section 363 of the Bankruptcy Code and Rules 2002 and 6004 of the Bankruptcy Rules.

        B.     Due notice of the Sale Motion, the proposed sale of the Sale Assets, and the Sale Hearing has been given to all parties entitled thereto, as evidenced by the Certificates of Service filed by the Trustee's counsel filed with this Court. Such notice constitutes appropriate and adequate notice to all parties-in-interest under the circumstances and complies with Section 102(l) of the Bankruptcy Code and Rules 2002, 6004, and 9014 of the Bankruptcy Rules. No other or further notice of the Sale Motion, the Sale Hearing, or the entry of this Sale Order is necessary.

---

[4] A true and correct copy of the Assignment and Assumption Agreement is attached hereto as "Exhibit B", and is incorporated herein for all purposes.

ORDER (I) AUTHORIZING AND APPROVING THE SALE, etc. – Page 2
DA-3386442 v6 2700061-00012

C.    Under the circumstances, a reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion has been afforded to all interested entities.

D.    The Debtor is the lawful owner of the Sale Assets.

E.    The Trustee has the full power and authority, on behalf of the Debtor's estate, to execute the Agreement, any related agreement, and all other documents contemplated by the Agreement as may be necessary or appropriate to effectuate any of the transactions contemplated thereby, and the sale, transfer, and conveyance of the Sale Assets by the Trustee, on behalf of the Debtor's estate, has been duly and validly authorized by all necessary power and authority necessary to consummate the transactions contemplated by the Agreement.    No consents or approvals, other than this Sale Order and those as may be expressly provided for in the Agreement, are required for the Trustee to consummate such transactions. The Trustee shall also be authorized by the terms of this Sale Order, without further order of the Court, to execute and deliver amendments to the Agreement, so long as the terms and conditions of such amendments are non-material and have been approved by Prosperity Bank, the holder of the first-priority lien on the Sale Assets.

F.    The Trustee has established sound business justifications in support of the proposed sale of the Sale Assets to the Successful Bidder.  Such business justifications include, but are not limited to, the facts that (i) the Trustee marketed the Sale Assets extensively, (ii) the Trustee has attempted in good faith to maximize the value of the Sale Assets, and (iii) the consideration to be received is reasonable and resulted from good faith, arms' length and bona fide negotiations.

G.    The transactions contemplated by the Sale Motion, as approved and implemented by this Sale Order, are in compliance with and satisfy all applicable provisions of

the Bankruptcy Code including, without limitation, Section 363(b) and (f). The terms and conditions of the sale of the Sale Assets, and the other transactions approved by this Sale Order and as set forth in the Agreement, are fair and reasonable.

H.     The sale of the Sale Assets to the Successful Bidder for the consideration set forth in the Agreement is in the best interest of the Debtor's estate, the Debtor's creditors, managers, members, and all parties-in-interest. The total consideration to be received by the Trustee pursuant to the Agreement is fair and reasonable.

I.     The Agreement was entered into by the parties in good faith, from arm's length bargaining positions, and without collusion. The Successful Bidder is not an "insider" or "affiliate" of the Debtor, as such terms are defined in the Bankruptcy Code. The Sale Assets are reasonably equivalent in value to the consideration that will be paid by the Successful Bidder. Neither the Trustee nor the Successful Bidder engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of Section 363(n) of the Bankruptcy Code to these transactions. Consequently, the Successful Bidder is a good faith purchaser under Section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby.

J.     In the absence of a stay pending appeal, the Successful Bidder will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Agreement pursuant to this Sale Order at any time after the entry of this Sale Order.

K.     The Trustee is authorized to sell the Sale Assets free and clear of all liens, claims, encumbrances, and other interests, with all liens, claims, encumbrances, or other interests attaching to the proceeds of the sale of the Sale Assets (the "Sale Proceeds") with the same

effectiveness, validity, and priority that such lien, claim, encumbrance, or other interest encumbered the Sale Assets prior to the proposed sale, as one of more of the standards set forth in Bankruptcy Code Section 363(f) have been satisfied with respect to each such interest.

L.    Prosperity Bank, the first-priority lien holder on the Sale Assets, has demanded that as adequate protection of its interests and as a condition to its consent to the sale of the Sale Assets hereunder, that it should be paid all of the Sales Proceeds at closing. This Sale Order provides for such payment to Prosperity Bank.

M.    The transfer of the Sale Assets to the Successful Bidder pursuant to the Agreement will be a legal, valid, and effective transfer of the Sale Assets, and will vest the Successful Bidder with all of the Debtor's rights, title, and interest in and to the Sale Assets, free and clear of all liens, claims, encumbrances, and other interests pursuant to Bankruptcy Code §§ 363(b) and (f), which have, or could have, been asserted by the Debtor or its creditors with any holder's lien, claim, interest or encumbrance attaching to the Sale Proceeds with the same effectiveness, validity, and priority that such interest encumbered the Sale Assets prior to the proposed sale. Based upon the foregoing, IT IS HEREBY

**ORDERED, ADJUDGED, AND DECREED** as follows:

1.    The Sale Motion shall be, and hereby is, granted, subject to the terms set forth in this Sale Order. There were no objections to the Sale Motion.

<u>**Sale of Assets Free and Clear**</u>

2.    The Agreement and each of its terms and conditions shall be, and hereby are, approved in their entirety, except as otherwise provided in this Sale Order. The sale of the Sale Assets to the Successful Bidder, shall be free and clear of all liens, claims, encumbrances, and other interests, and such sale is hereby authorized under Sections 363(b) and (f) of

the Bankruptcy Code. The Trustee is hereby authorized to execute, deliver, implement, and fully perform the Agreement, together with all additional instruments and documents which may be reasonably necessary, convenient, or desirable to implement the terms of the Agreement, and to take any and all further actions as may be necessary or appropriate to perform the obligations, and effectuate the transactions contemplated by the Agreement. The Trustee is authorized and empowered to enter into such agreements and to deliver on the closing date (and thereafter as requested by the Successful Bidder) bills of sale, assignments and other such documentation that may be necessary or reasonably requested by the Successful Bidder to evidence or effectuate the transfers contemplated in the Agreement and this Sale Order.

3.    Pursuant to Section 363(e) and (f) of the Bankruptcy Code, on the closing date, the Sale Assets and all of the Trustee's (as the Seller) right, title, and interest therein shall be transferred to and vested in and to the Successful Bidder in accordance with the Agreement free and clear of all pre- and post-Petition Date liens, claims, interests, and encumbrances. All such liens, claims, interests, and encumbrances shall be released, terminated, and discharged as to the Sale Assets, and all such claims, interests, encumbrances and liens shall attach solely to the Sale Proceeds in the same order of priority and with the same effectiveness as existed prior to such sale.

4.    The Sale Proceeds from the sale shall be paid to Prosperity Bank on the Closing Date. Following the Closing Date, the Trustee shall remit to Prosperity Bank all cash held by the Trustee, any tax refunds due the Debtor's estate, any deposits or overpayments on utilities or insurance due the Debtor's estate, or any other collateral proceeds, along with any collections of accounts receivable.

5.    All persons or entities holding claims, encumbrances, liens, or interests of any kind and nature with respect to the Sale Assets are hereby forever barred and estopped from asserting such claims, encumbrances, liens or interests of any kind or nature against the Successful Bidder, its successors or assigns, or the Sale Assets. All persons and entities holding liens, claims, interests or encumbrances of any kind or nature with respect to the Sale Assets are hereby directed to execute and deliver all additional instruments and documents which the Successful Bidder may deem reasonably necessary, convenient or desirable to evidence the sale of the Sale Assets free and clear of all liens, claims, interests and encumbrances, including, without limitation, termination statements on form UCC-3 and releases of liens.

### Miscellaneous

6.    Notwithstanding anything to the contrary that may be contained in the Agreement, the Sale Assets sold by the Trustee to the Successful Bidder shall not include any Excluded Assets (including, but not limited to, any cash held by the Trustee, any tax refunds due the Debtor's estate, any deposits or overpayments on utilities or insurance due the Debtor's estate, any Chapter 5 causes of action under the Bankruptcy Code, collections of accounts receivable, or any other collateral proceeds).

7.    Neither the Trustee nor the Successful Bidder shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the foregoing provisions hereof; provided, however, that this paragraph shall not (i) excuse such parties from performing any and all of their respective obligations under the Agreement and any other documents contemplated to be executed

in connection therewith, or (ii) excuse any person or entity from complying with any provision of this Sale Order.

8.    Except as expressly permitted or otherwise specifically provided by the Agreement or this Sale Order, and only to the fullest extent authorized by applicable law, all persons and entities (and their respective successors and assigns) including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding interests, liens, claims, and/or encumbrances of any kind or nature whatsoever against or in the Debtor or the Sale Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Sale Assets, the operation of the Debtor's business prior to the Closing, or the transfer of the Sale Assets to the Successful Bidder, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' interests, liens, claims, or encumbrances against the Successful Bidder, its affiliates, designees, assignees, or successors, its properties, or its Sale Assets.    Effective upon the Closing Date, the Successful Bidder shall have no liability for any claims (as defined in Section 101(5) of the Bankruptcy Code) against the Debtor or interests in the Debtor, except as expressly provided in the Agreement, and only to the fullest extent authorized by applicable law.

9.    Except for the liabilities expressly assumed by the Successful Bidder under the Agreement, and only to the fullest extent authorized by applicable law, the Successful Bidder shall not be liable for any claims against the Debtor, and the Successful Bidder shall have no successor or vicarious liabilities of any kind or character whether known or

unknown as of the closing of the sale, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or the Debtor's estate. Except for the liabilities assumed under the Agreement, and only to the fullest extent authorized by applicable law, under no circumstances will the Successful Bidder be deemed a successor of or to the Debtor for any liens, claims, encumbrances, or other interests against the Debtor, the Debtor's estate or the Sale Assets (collectively, the "Liens and Claims"). The sale, transfer, assignment and delivery of the Sale Assets shall not be subject to any Liens and Claims, except such liabilities or obligations that accrue from and after the Closing with respect to the Sale Assets.

10.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing interests with respect to the Debtor or the Sale Assets shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtor or the Sale Assets or otherwise, then (a) the Trustee is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Sale Assets and (b) the Successful Bidder and/or the Trustee are hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all interests, liens, claims, and/or encumbrances in the Sale Assets of any kind or nature whatsoever. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

11.     All entities who are presently, or on the Closing Date may be, in possession of any of the Sale Assets are hereby directed to surrender possession of the Sale Assets to the Successful Bidder on the Closing Date, except as may be otherwise directed by the Successful Bidder.

12.     The transactions contemplated by the Agreement are undertaken by the Successful Bidder in good faith, as that term is used in Bankruptcy Code Section 363(m). Accordingly, the reversal or modification of the authorization provided herein to consummate the transactions contemplated herein shall not affect the validity of the sale of the Sale Assets to the Successful Bidder, unless such authorization is duly stayed. The Successful Bidder is a purchaser in good faith of the Sale Assets and, upon the occurrence of the Closing Date, is entitled to all of the protections afforded by Bankruptcy Code Section 363(m).

13.     The Agreement and all other documents, agreements, and instruments necessary to effectuate and consummate the transactions contemplated by the Agreement together with the terms and provisions of this Sale Order, shall be binding upon and shall inure to the benefit of the Trustee (as the Seller), the Successful Bidder, and their respective successors and assigns, including, without limitation, any trustee, responsible person, estate administrator, representative or similar person hereinafter appointed for or in connection with the Debtor's affairs in this or in any subsequent case under the Bankruptcy Code involving the Debtor.

14.     Following the Closing Date, no holder of any Liens and Claims of any kind or nature whatsoever in or against the Debtor or the Sale Assets shall interfere with the Successful Bidder's title to or use and enjoyment of the Sale Assets based on or related to the Liens

and Claims, or any actions that the Debtor or the Trustee may have taken or may take in this case, except as set forth in the Agreement.

15.    The failure to specifically include any particular provision of the Agreement or the related agreements in this Sale Order will not diminish the effectiveness of such provision, it being the intent of this Court that the Agreement and related agreements and transactions contemplated thereby are authorized and approved in their entirety, provided, however, that in the event of any inconsistency between this Sale Order and the Agreement, this Sale Order shall control.

16.    If the Successful Bidder fails to close the transactions and is in breach of the Agreement, the Second Highest and Best Bidder[5] shall thereafter be deemed to be the "Successful Bidder" for purposes of this Sale Order under its alternative sale agreement (the "Alternative Sale Agreement") without further order of this Court, and all references in this Sale Order to the "Successful Bidder" shall refer to the "Second Highest and Best Bidder". Further, the Trustee shall promptly file with this Court a copy of the Alternative Sale Agreement, and all references in this Sale Order to the "Agreement" shall refer to the "Alternative Sale Agreement".

17.    Pursuant to Section 363(m) of the Bankruptcy Code, the reversal or modification of this Sale Order on appeal will not affect the validity of the transfer of the Sale Assets to the Successful Bidder, as well as the transactions contemplated or authorized by this Sale Order, unless the same is stayed pending appeal prior to the closing date and the consummation of the transactions authorized by this Sale Order.

---

[5] The term "Second Highest and Best Bidder" shall mean the second highest and best bid submitted by a bidder and approved by the Trustee and Prosperity Bank.

ORDER (I) AUTHORIZING AND APPROVING THE SALE, etc. – Page 11
DA-3386442 v6 2700061-00012

18.   Notwithstanding the provisions of Bankruptcy Rules 6004(h), there is no stay pursuant to
Bankruptcy Rule 6004(h) and this Sale Order shall be effective and enforceable
immediately upon entry, this Court having found that there is "cause" to waive the 14-day
stay otherwise applicable. To the extent necessary under Rules 5003, 9014, 9021 and
9022 of the Bankruptcy Rules, this Court expressly finds that there is no just reason for
delay in the implementation of this Sale Order and expressly (i) directs entry of this Sale
Order and (ii) authorizes the Trustee to consummate the transactions as soon as
practicable.

19.   This Court retains exclusive jurisdiction so long as the Debtor's case is pending to (i)
enforce and implement the terms and provisions of the Agreement (including the breach
of the Agreement), all amendments thereto, any waivers and consents thereunder, and of
each of the agreements executed in connection therewith in all respects and (ii) determine
as a core proceeding (by motion and without necessity for an adversary proceeding if this
Court deems appropriate) any proceeding, dispute, or controversy arising out of or related
to this Sale Order and the Sale Hearing.

Signed on 11/02/2015

*Brenda T. Rhoades*          SR

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

AGREED TO:

**MOORE LAW FIRM, L.L.P.**

By: *s/ Bill Payne*
　　BILL F. PAYNE, SBN 15649500

12770 Coit Road, Suite 541
Dallas, Texas 75251
Tel.: (972) 628-4901

**COUNSEL FOR THE CHAPTER 7 TRUSTEE**

**K&L GATES LLP**

By: _____
　　David Weitman (TX 21116200)
　　Jennifer Klein Ayers (TX 24069322)

1717 Main St., Suite 2800
Dallas, TX 75201
Telephone:  (214) 939.5500
Facsimile:  (214) 939.5849
david.weitman@klgates.com
jennifer.ayers@klgates.com

**ATTORNEYS FOR PROSPERITY BANK**

# EXHIBIT "A"

## ASSET PURCHASE AGREEMENT

**[see attached]**

EXHIBIT "A"
DA-3386442 v6 2700061-00012

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement"), made as of October 22, 2015, by and between Linda Payne (the "Seller" or the "Trustee"), on behalf of, and solely in her capacity as the duly appointed Chapter 7 Trustee for the bankruptcy estate of Armada Midcontinent, LLC (the "Debtor"), and John E. Galemore (the "Buyer"). (Sometimes the Seller and the Buyer shall be collectively referred to as the "Parties").

### RECITALS

A.   On August 28, 2015 the Debtor filed its voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court"), in Bankruptcy Case No. 15-41557.

B.   Thereafter, Linda Payne was appointed as the Chapter 7 Trustee for the Debtor's estate.

C.   On October 20, 2015, the Buyer submitted a bid (the "Bid") in the form of a letter agreement, incorporating a form of the asset purchase agreement, and providing for a purchase price for the Sale Assets (as defined below) in the amount of $3,500,000, which letter agreement is now reflected in this Agreement and shall constitute the bid of the Buyer.

D.   Within three (3) business days following the Trustee's acceptance of the Bid received by the Trustee, the Trustee will file her motion (the "Sale Motion") seeking to sell substantially all of the assets of the Debtor's estate free and clear of all liens, claims, encumbrances, and interests (other than liens, claims, encumbrances, and interest that are not property of the estate of Debtor under Section 541 of the Bankruptcy Code) pursuant to a sale other than in the ordinary course of the Debtor's business, under Section 363(f) of the Bankruptcy Code.

E.   The Buyer wishes to purchase all of the Sale Assets (as defined in Section 1(b) below) on the terms and conditions set forth herein and subject to a Final Order (as defined in Section 9(a) below) of the Bankruptcy Court approving such sale.

### W I T N E S S E T H:

In consideration of the foregoing recitals and the mutual promises, representations, covenants, payments and actions herein provided, the Parties each intending to be legally bound hereby, agree to the above Recitals and as follows:

1.   Sale of Sale Assets.

(a)   At the Closing (as such term is defined below in Section 3(a)) of the transaction contemplated hereby, the Seller shall sell, assign, transfer and deliver to the Buyer, and the Buyer shall purchase and accept from the Seller, the Sale Assets, free and clear of any pledge, lien, license, option, sublease, security interest, claim, charge, or encumbrance of any kind whatsoever (except for ad valorem, real and personal property taxes and interests owned by third parties that do not constitute "property of the estate"

ASSET PURCHASE AGREEMENT – Page 1
DA-3386439 v9 2700061-00012

under Section 541 of the Bankruptcy Code), for the purchase price set forth in <u>Section 2</u> below (the "<u>Purchase Price</u>").

 (b) <u>Sale Assets</u>. The assets of the Debtor's estate to be purchased and sold under this Agreement consist of all of the Debtor's right, title, and interest in the following assets of the Debtor's estate, other than the Excluded Assets (as defined in <u>Section 1(c)</u> below) (collectively, the "<u>Sale Assets</u>"):

 (i) <u>Oil and Gas Properties.</u> Fee interests, leasehold interests, licenses, concessions, working interests, farmout rights, royalty, overriding royalty or other non working or carried interests, operating rights or other mineral rights of every nature and any rights that arise by operation of law or otherwise in all properties and lands pooled, unitized, communitized or consolidated with such properties, including without limitation all interest (of whatever kind or character, whether legal or equitable, and whether vested or contingent) of the Debtor in and to (i) the Oil and Gas Leases described on <u>Exhibit "A"</u> (the "<u>Leases</u>"), (ii) the lands covered by the Leases or otherwise described on <u>Exhibit "A"</u>, the Leases and lands included in any units with which the Leases or the lands covered thereby or otherwise described on <u>Exhibit "A"</u> may have been pooled, unitized or commingled and (iii) the oil, gas and other minerals in and under or that may be produced from the lands covered by the Leases or otherwise described on <u>Exhibit "A,"</u> whether such lands be described on a description set forth on <u>Exhibit "A"</u> or described on <u>Exhibit "A"</u> by reference to another instrument and whether the Debtor's interest therein is correctly or incorrectly described on <u>Exhibit "A"</u> or such referenced instrument (collectively, the "<u>Oil and Gas Properties</u>"); the term Oil and Gas Properties shall be deemed to include all Wells.)

 (ii) <u>Wells.</u> All production, injection, disposal, and other wells located on or used in connection with the operation of the Oil and Gas Properties, whether or not plugged and abandoned.

 (iii) <u>Equipment.</u> All equipment, machinery, fixtures, physical assets and facilities, pipe, inventory, improvements, and other personal, mixed, or movable property or interests whether located on or off the lands covered by the Leases, used in connection with the ownership or operation of the Oil and Gas Properties (except for any such personal property leased from Third Parties) including the equipment, machinery fixtures, physical assets and facilities, pipe, fixtures, inventory, improvements, and other personal, mixed or movable property or interests set forth on <u>Exhibit "A"</u> hereto.

 (iv) <u>Hydrocarbons.</u> All oil, gas, other liquid or gaseous hydrocarbons, and all products refined therefrom ("<u>Hydrocarbons</u>") produced from the Oil and Gas Properties (including wells) and all proceeds attributable thereto, in each case, on and after the Effective Date (as defined in <u>Section 14</u> below), or in storage and on the Effective Date.

<u>**ASSET PURCHASE AGREEMENT**</u> **– Page 2**
DA-3386439 v9 2700061-00012

(v)     Surface Rights.    All fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements, as the same may exist, and similar rights and interests (if any) located on or with respect to the lands covered by the Leases or otherwise described in clause (i) above or that otherwise relate to the interests of the Debtor described in clauses (i) and (ii) above.

(vi)    Intangible Property.    All of the Debtor's business records, historical records, and archived business records relating to the operation of its business, and all goodwill of the operation of its business, but excluding any legally privileged records, if any, as determined by the Trustee in her sole discretion (the "Intangible Property").

(c)     **Excluded Assets**.   The Sale Assets do not include the following assets of the Debtor's estate (collectively, the "Excluded Assets"):

(i)     All cash, cash deposits or cash equivalents of the Debtor's estate;

(ii)    All right, title, and interest of the Debtor's estate in and to its accounts and other receivables (other than accounts and receivables attributable to the sale of hydrocarbons after the Effective Date and for which the Purchase Price is not adjusted upwards pursuant to Section 2);

(iii)   All claims and causes of action of the Debtor's estate, including any and all claims owned by, through, or under the Debtor or the Debtor's estate (including, without limitation, any litigation or arbitration claims and any refunds and deposits), rights, rights of offset or causes of action that the Debtor's estate may have against or from any person or entity relating to (a) any of the Excluded Assets; (b) those arising under and relating to the Bankruptcy Code, including under Chapter 5 of the Bankruptcy Code; (c) any rights under any insurance policy, any and all claims and causes of action belonging to the Debtor's estate; and (d) the Debtor's former employees, officers, or directors;

(iv)    All claims and causes of action of the Debtor's estate, including any and all claims owned by, through, or under the Debtor or the Debtor's estate that may be asserted against the Buyer, including any claims to the extent of the Buyer's failure to close such transactions hereunder or any documents delivered in connection herewith;

(v)     Originals of all corporate, financial and tax records of the Debtor's estate, including, without limitation, the Debtor's organizational documents, and other documents and instruments relating solely to the organization, maintenance and existence of the Debtor as a limited liability company (and the Buyer may obtain copies of all such records at its own expense); and

(vi)    Any tax refunds, overpayments for utility charges, and insurance premium refunds due the Debtor's estate.

2.     Payment of Purchase Price.

(a)     Purchase Price. The unadjusted Purchase Price to be paid by the Buyer to the Seller for the transfer of the Sale Assets shall consist of cash in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000), subject to adjustment as set forth in Section 2(c) and Section 2(f) below. The Purchase Price shall be paid at Closing by the Buyer to the Seller, as provided below.

(b)     Payment of the Purchase Price. At Closing, Buyer shall pay the purchase price, adjusted as set forth in this Section 2, to Seller in same-day funds as set forth in Section 2(c), with credit to be given for the Earnest Money Deposit (as defined in Section 2(c) below).

(c)     Adjustments to Purchase Price. The Purchase Price shall not be adjusted, except (i) as set forth in Section 2(f) below, and (ii) that the earnest money deposit of One Hundred Seventy-Five Thousand Dollars ($175,000) (the "Earnest Money Deposit") shall be applied in reduction of the Purchase Price pursuant to the terms hereof. The Buyer delivered the Earnest Money Deposit to the Seller, in care of the Trustee's counsel, The Moore Law Firm, L.L.P., by certified check, to The Moore Law Firm, L.L.P.'s trust account on October 21, 2015, and thereafter the Seller's counsel shall transfer such funds to the Seller in accordance with the Notice of Bid Procedures provided to the Buyer prior to the entry of this Agreement (the "Bid Procedures").

In the event the Closing does not occur because of the material breach of this Agreement by the Seller, or a failure of the Conditions Precedent to the Buyer's obligations (specified in Section 9 hereof) to be satisfied, and the Earnest Money Deposit is otherwise due and payable to the Buyer pursuant to Section 20, the Seller shall return the Earnest Money Deposit promptly to the Buyer.

(d)     "As-Is, Where-Is". THE BUYER ACKNOWLEDGES THAT EXCEPT FOR ANY EXPRESS WARRANTIES AND REPRESENTATIONS CONTAINED IN THIS AGREEMENT, THE BUYER IS NOT RELYING ON ANY WRITTEN, ORAL, IMPLIED OR OTHER REPRESENTATIONS, STATEMENTS OR WARRANTIES BY THE SELLER, THE DEBTOR'S ESTATE, OR ANY MEMBER OF THE SELLER GROUP (AS DEFINED BELOW). GRANTOR MAKES NO, AND EXPRESSLY DISCLAIMS AND NEGATES, ANY REPRESENTATION OR WARRANTY, WHETHER EXPRESS, IMPLIED, OR STATUTORY, AS TO TITLE TO ANY OF THE SALE ASSETS. EXCEPT AS EXPRESSLY SET FORTH HEREIN, THE SELLER, THE DEBTOR'S ESTATE, AND EACH MEMBER OF THE SELLER GROUP SHALL HAVE NO LIABILITY TO THE BUYER, AND BUYER HEREBY RELEASES, AND AGREES TO INDEMNIFY, DEFEND, AND HOLD HARMLESS, THE SELLER, THE DEBTOR'S ESTATE, THE DEBTOR'S LENDER AND EACH OF THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, AND ATTORNEYS (THE "SELLER GROUP"), FROM ANY LIABILITY ARISING UNDER OR IN ANY WAY RELATED TO THIS AGREEMENT, EVEN IF CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE (WHETHER ACTIVE, PASSIVE, CONCURRENT, OR OTHERWISE), STRICT LIABILITY,

OR OTHER LEGAL FAULT OF ANY MEMBER OF SELLER GROUP. EXCEPT AS EXPRESSLY PROVIDED HEREIN IN SECTION 7, NEITHER THE SELLER, THE DEBTOR'S ESTATE, NOR ANY MEMBER OF THE SELLER GROUP HAS MADE, AND THE BUYER DOES EXPRESSLY DISCLAIM, ANY WARRANTIES AND REPRESENTATIONS, EXPRESSED OR IMPLIED, OR ARISING BY OPERATION OF LAW, AS TO THE MERCHANTABILITY, HABITABILITY, QUANTITY, QUALITY, VALUE (INCLUDING ANY STEP-OUT DRILLING OPPORTUNITIES) OR ENVIRONMENTAL CONDITION OF THE SALE ASSETS, THE SALE ASSETS' SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, OR WHETHER PRODUCTION THEREFROM HAS BEEN IN PAYING OR COMMERCIAL QUANTITIES OVER ANY PERIOD OF TIME. THE BUYER HEREBY ACCEPTS THE SALE ASSETS IN THEIR PRESENT CONDITION ON AN "AS IS", "WHERE IS" AND "WITH ALL FAULTS" BASIS AND ACKNOWLEDGES THAT (i) WITHOUT THIS ACCEPTANCE, THIS SALE WOULD NOT BE MADE, AND (ii) NO MEMBER OF THE SELLER GROUP SHALL BE UNDER ANY OBLIGATION WHATSOEVER TO UNDERTAKE ANY REPAIR, ALTERATION, REMEDIATION OR OTHER WORK OF ANY KIND WITH RESPECT TO ANY PORTION OF THE SALE ASSETS. THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE CLOSING.

(e)    Additional Disclaimers; Release; Indemnification. AS A MATERIAL INDUCEMENT TO SELLER TO ENTER INTO THIS AGREEMENT AND TO CONVEY THE PROPERTY TO BUYER, BUYER HEREBY ACKNOWLEDGES AND AGREES THAT EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT OR THE DOCUMENTS TO BE EXECUTED AND DELIVERED BY SELLER TO BUYER AT THE CLOSING PURSUANT TO THE TERMS OF THIS AGREEMENT (THE "CLOSING DOCUMENTS"):

(i)    INFORMATION SUPPLIED BY SELLER. EXCEPT FOR ANY EXPRESS REPRESENTATIONS AND WARRANTIES CONTAINED IN THIS AGREEMENT OR THE CLOSING DOCUMENTS, BUYER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT SELLER HAS MADE, IS MAKING, AND SHALL MAKE, NO REPRESENTATION OR WARRANTY OF ANY NATURE CONCERNING THE ACCURACY OR COMPLETENESS OF SELLER'S DOCUMENTS, OR THE AUTHENTICITY, SOURCE, ACCURACY OR COMPLETENESS OF ANY INFORMATION CONTAINED IN SUCH SELLER'S DOCUMENTS OR ANY OTHER DOCUMENTS PREVIOUSLY OR HEREAFTER FURNISHED BY OR ON BEHALF OF SELLER TO BUYER, INCLUDING WITHOUT LIMITATION THE LEASES, ENVIRONMENTAL ASSESSMENTS, AND VARIOUS STUDIES, INSPECTIONS, REPORTS AND EXHIBITS AND CORRESPONDENCE RELATING THERETO. BUYER SHALL BE RESPONSIBLE FOR DEALING DIRECTLY WITH THE ISSUER OR PREPARER OF ANY DOCUMENTS, ASSESSMENTS, STUDIES, INSPECTIONS, OR REPORTS TO THE EXTENT THAT BUYER DESIRES ANY EXPRESS RIGHT OF RELYING THEREON. BUYER FURTHER ACKNOWLEDGES THAT SELLER HAS NOT REVIEWED AND IS UNDER NO OBLIGATION TO REVIEW ANY FILES IN

SELLER'S POSSESSION OR WHICH MAY BE AVAILABLE TO SELLER. AS TO CERTAIN OF THE MATERIALS MADE AVAILABLE TO BUYER IN SELLER'S DOCUMENTS, BUYER SPECIFICALLY ACKNOWLEDGES THAT THEY HAVE BEEN PREPARED BY THIRD PARTIES WITH WHOM BUYER HAS NO PRIVITY AND BUYER ACKNOWLEDGES AND AGREES THAT NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, HAS BEEN MADE, NOR SHALL ANY BE DEEMED TO HAVE BEEN MADE, TO BUYER WITH RESPECT THERETO, EITHER BY SELLER OR BY ANY THIRD PARTIES THAT PREPARED THE SAME. EXCEPT FOR ANY EXPRESS REPRESENTATIONS AND WARRANTIES CONTAINED IN THIS AGREEMENT OR THE CLOSING DOCUMENTS, BUYER WAIVES ANY CLAIM OF ANY NATURE AGAINST SELLER SHOULD ANY INFORMATION, CONCLUSION, PROJECTION, OR OTHER STATEMENT OF ANY NATURE CONTAINED IN ANY OF SUCH MATERIALS PROVE NOT TO BE TRUE OR ACCURATE FOR ANY REASON. BUYER REPRESENTS AND WARRANTS THAT IT HAS BEEN AFFORDED AN OPPORTUNITY TO REVIEW THE OIL AND GAS PROPERTIES AND ALL FILES AND RECORDS RELATING THERETO, AND, AT CLOSING, BUYER SHALL BE DEEMED TO HAVE KNOWLEDGE OF THE STATE AND CONTENTS THEREOF.

(ii)   NEGOTIATED PURCHASE PRICE. BUYER REPRESENTS AND WARRANTS TO SELLER THAT BUYER IS SPECIFICALLY FAMILIAR WITH THE PROPERTY AND THAT BUYER HAS INSPECTED AND EXAMINED, OR WILL INSPECT AND EXAMINE, ALL ASPECTS OF THE PROPERTY AND ITS CURRENT CONDITION THAT BUYER BELIEVES TO BE RELEVANT TO ITS DECISION TO PURCHASE THE PROPERTY. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT THE PURCHASE PRICE NEGOTIATED BY SELLER AND BUYER REFLECTS THE KNOWN AND UNKNOWN RISKS AND LIABILITIES ASSUMED BY BUYER UNDER THE AGREEMENT, SELLER'S UNWILLINGNESS TO CONDUCT ANY INVESTIGATION OR DUE DILIGENCE WITH RESPECT TO THE PROPERTY ON BEHALF OF BUYER, AND SELLER'S DESIRE TO RECEIVE AN ABSOLUTELY NET, FIXED AMOUNT AS CONSIDERATION FOR THE SALE OF THE PROPERTY REGARDLESS OF ANY FACTS KNOWN OR DISCOVERED BEFORE OR FOLLOWING THE CLOSING WHICH MIGHT RESULT IN A DIMINUTION IN VALUE OF THE PROPERTY, EXCEPT FOR ANY LIABILITY SELLER MAY HAVE FOR ANY BREACH BY SELLER OF ANY EXPRESS WARRANTIES, REPRESENTATIONS OR COVENANTS IN THIS AGREEMENT OR IN THE CLOSING DOCUMENTS.

(f)   The Purchase Price shall be adjusted (i) downward by the amount received by Seller from the proceeds of the sale of hydrocarbons produced from and after the Effective Date; (ii) upward by the amount received by Buyer from the proceeds of the sale of hydrocarbons produced prior to the Effective Date (other than hydrocarbon storage inventories described in Section 1(b); (iii) upward by the value, based on the Debtor's share of all hydrocarbons in storage on the Effective Date; (iv) upward by the amount of all costs from or attributable to the Oil and Gas Properties incurred from and after the Effective Date but paid or borne by or on behalf of Buyer; (v) upward by the

amount of all prepaid expenses (including prepaid insurance costs, production taxes, bonuses, rentals, and cash calls to third person operations); and (vi) downward by an amount determined in accordance with Section 13.

3.     Closing and Delivery of Possession.

      (a)     Closing. Subject to satisfaction of the conditions precedent set forth in Sections 9 and 10 below, the date (the "Closing Date") of closing and consummation of the sale pursuant to the terms of this Agreement (the "Closing") shall take place at the offices of the Seller's counsel, The Moore Law Firm, L.L.P., 12770 Coit Road, Suite 541, Dallas, Texas 75251, within three (3) business days following the entry of the Sale Order (as defined below), which is a Final Order; provided, however, in the event that Closing does not occur by December 1, 2015, and unless otherwise agreed to in writing by the Parties, this Agreement will terminate.

      (b)     Possession. Possession of the Sale Assets shall be delivered to the Buyer following the Closing on the Closing Date.

4.     Documents at Closing.

At the Closing, the documents, statements, and other items listed below will be delivered:

      (a)     Assignment and Bill of Sale for Sale Assets. The Seller shall deliver an Assignment and Bill of Sale for the Sale Assets. The Sale Assets shall be purchased "as is, where is", and without warranty of any kind, including warranties of merchantability or fitness. The Assignment and Bill of Sale for Sale Assets will be in substantially the form of the Assignment and Bill of Sale for Sale Assets attached hereto as Exhibit "B" and incorporated herein for all purposes.

      (b)     Closing Statement. The parties shall execute a Closing Statement and Schedule of Disbursements detailing the Purchase Price, adjustments and prorations, receipts and disbursements of this transaction.

      (c)     Purchase Price. The Buyer will deliver the cash portion of the Purchase Price (as adjusted under Section 2(c) and Section 2(f) above) to the Seller pursuant to Section 2(b) above.

      (d)     Tax Affidavit. Seller will deliver to Buyer a certificate, duly executed by Seller as required by U.S. Treasury Regulation 1.1445-2(b)(2).

      (e)     Letters in Lieu. Seller will deliver letters in lieu of transfer or division orders executed by Seller.

      (f)     Certified Copies of Bankruptcy Documents. Seller will deliver to Buyer at or prior to Closing certified copies of the Sale Motion, the Trustee's Certificate of Service with respect to the Sale Motion, and the Sale Order.

(g)   Additional Transfer Documents. Seller will deliver to Buyer at or prior to Closing a KCC Form T-1, completed with Seller's information pursuant to KAR 82-3-136. Buyer agrees to prepare the Form T-1 for Seller's approval prior to the hearing on the Sale Motion, with Seller executing the same after the Sale Order solely in her representative capacity as the Chapter 7 Trustee of the Debtor.

(h)   Closing Documents.  The Seller will deliver to the Buyer such other closing documents as the Buyer or its counsel may reasonably request in writing not later than the day prior to the Closing.

5.   Inspection of Documents and Oil and Gas Properties.

If not already provided, then, within five (5) calendar days following the date of this Agreement and thereafter upon receipt of any additional item or information as it becomes available to the Seller, the Seller shall allow the Buyer to inspect the following which apply to the Sale Assets and which are in the control of the Seller, provided, however, that (i) by this Agreement, Buyer hereby agrees to indemnify, defend, and hold Seller and the Seller Group harmless from any and all claims, liabilities, and demands arising from any actions taken by Buyer with respect to its access to or activities on the Oil and Gas Properties, either or before or after the Closing Date, EVEN IF CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE (WHETHER PASSIVE, ACTIVE, SOLE, CONCURRENT, OR OTHERWISE), STRICT LIABILITY, OR OTHER LEGAL FAULT OF ANY MEMBER OF SELLER GROUP; and (ii) other than a Phase I Environmental Report (which shall be coordinated with Seller), Buyer shall have no right to conduct any other assessments of the Oil and Gas Properties:

(a)   copies of all the Debtor's permits, approvals and license agreements, and other relevant regulatory authorities; and

(b)   such other items or information in Seller's possession relating to the Sale Assets as the Buyer may reasonably request including, but not limited to, the Debtor's existing books and records related to financial information and/or intellectual property.

6.   No Assumption of Liabilities of the Debtor or the Debtor's Estate, Except as Provided Herein.

With the exception of liabilities otherwise provided in this Agreement, the Buyer shall not assume, and the Buyer shall not have been deemed to have assumed, any debts, liabilities, or obligations of the Seller, or the Debtor's estate or of the Debtor's officers, members, employees, or agents of any nature, known or unknown, fixed or contingent, including, but not limited to, pre-petition or post-petition debts, liabilities, or obligations with regard or in any way relating to any contracts, trade payables, or tax liabilities.  Disclosure of any obligation or liability on any schedule to this Agreement shall not create an assumed obligation or other liability of the Buyer, except where such disclosed obligation has been expressly assumed by the Buyer as an assumed obligation in accordance with the provisions hereof.

7.     Representations of the Seller.

The Seller hereby represents to the Buyer, to the best of Seller's knowledge, as follows, and that all such representations shall be true and correct at and as of the time of Closing and shall survive the Closing hereunder:

(a)     Organization of the Debtor.  The Debtor is an Oklahoma limited liability company, duly organized and validly existing under the laws of the State of Oklahoma.

(b)     Power to Sell Sale Assets.  The Bankruptcy Court shall enter, or have entered, an order (the "Sale Order") approving the sale of the Sale Assets under the terms of this Agreement, and stating that (i) the Seller is the rightful owner of all right, title, and interest in and to the Sale Assets, (ii) the Seller has the full right and power to sell, transfer, assume, assign and deliver the Sale Assets pursuant to the terms and conditions of this Agreement, (iii) the Seller has all requisite power and authority to enter into and be bound by the terms and conditions of this Agreement and all other agreements and documents to be executed or delivered by the Seller in connection herewith, and (iv) the Seller's execution, delivery and performance of this Agreement have been duly authorized by all necessary action and no further action of the Seller is necessary other than the Sale Order.

(c)     Title to Sale Assets.  The Sale Order will further provide that (i) the Seller has the full power and authority to take any and all actions as provided for in this Agreement, and (ii) all right, title, and interest of the Seller in and to the Sale Assets will vest in the Buyer all right, title and interest to all of the Sale Assets to be sold under this Agreement, free and clear of all mortgages, liens, charges and encumbrances created by or on account of the Debtor, the Debtor's estate, or the Trustee (except for the ad valorem real and personal property taxes as provided in Section 1(a) above, and excluding any rights and interests of third parties that would not be property of the Debtor's estate under Section 541 of the Bankruptcy Code).

8.     Representations and Warranties of the Buyer.

The Buyer represents and warrants to the Seller as follows and all such representations and warranties shall be true and correct at and as of the time of Closing and shall survive the sale hereunder:

(a)     [RESERVED].

(b)     No Violation of Other Agreements.  Neither the execution and delivery of this Agreement nor compliance with the terms and conditions of this Agreement by the Buyer will breach or conflict with any of the terms, conditions or provisions of any agreement or instrument to which the Buyer is a party or by which the Buyer is or may be bound or constitute a default thereunder or result in a termination of any such agreement or instrument.

(c)     Approval.  The execution and delivery of this Agreement, on behalf of the Buyer, has been approved by the applicable governing authority of the Buyer, and no

further corporate action is required on behalf of the Buyer to approve the execution and delivery of this Agreement or compliance by the Buyer herewith.

9.     Conditions Precedent to Buyer's Obligations.

All obligations of Buyer under this Agreement are subject to fulfillment, at or prior to the Closing, of each of the following conditions:

(a)     Bankruptcy Court Approval. The Seller shall present testimony or make an offer of proof at the hearing on the motion seeking the Sale Order, if necessary, to enable the Bankruptcy Court to make the requisite findings of adequacy of notice and to enter the Sale Order. The Bankruptcy Court shall have entered the Sale Order, which order the Parties anticipate will be signed and entered within thirty (30) days of the filing of the Sale Motion (in form reasonably acceptable to Buyer and Seller) (a "Final Order"), not subject to appeal, or, if an appeal of the Sale Order is pending, the appeal shall not have stayed the effect of the Sale Order, nor shall the Sale Order be subject to stay, by an order of the Bankruptcy Court or any other court having jurisdiction to issue such stay. The Sale Order will provide that:

(i)     the notice of sale contemplated herein is in all aspects adequate, proper and sufficient, with a specific recitation as to the creditors which were noticed of the proposed transactions (as well as the notice procedure that was followed);

(ii)     a description of the proposed transactions, the parties involved, and the value of the consideration being paid by the Buyer for the Sale Assets;

(iii)     a statement that the transfers to be made pursuant to this Agreement are free and clear of all liens, claims, encumbrances, and other interests, with such liens, claims, encumbrances, and other interests to attach solely to the net proceeds received by the Seller from the sale of the Sale Assets in the same order of priority and with the same effectiveness as existed prior to the sale;

(iv)     the Buyer is a good faith purchaser and is entitled to all of the protections of 11 U.S.C. §363(m); and (b) Rule 6004(b) of the Federal Rules of Bankruptcy Procedure are waived;

(v)     the Purchase Price and all other aspects of the transactions contemplated hereby are in good faith, were negotiated at arm's length, and provide the Debtor's estate with reasonably equivalent value;

(vi)     the Bankruptcy Court finds that the Seller, on behalf of the Debtor's estate, is the owner of all right, title, and interest in and to the Sale Assets and is authorizing and directing the Seller to execute this Agreement, for and on behalf of the Debtor's estate, and to do and to execute any and all other actions in connection with the consummation of the transactions provided under this Agreement; and

(vii)   upon the Bankruptcy Court's approval of such transactions, all of the terms and conditions are valid and enforceable obligations of the Seller, for and on behalf of the Debtor's estate.

(b)   Documents of Transfer.   The Seller shall have delivered to the Buyer documents of transfer (including the Assignment and Bill of Sale), in form reasonably acceptable to the Buyer, which are sufficient to transfer good title to all of the Sale Assets consistent with the terms hereof.

(c)   Notice of Sale.   The Sale Order shall provide that the notice of the sale was proper and sufficient for all purposes.

(d)   Filing of Motion.   The Trustee shall pursue the entry of the Sale Order consistent with the terms and conditions of Bid Procedures.

10.   Conditions Precedent to the Seller's Obligations.   All obligations of the Seller under this Agreement are subject to fulfillment at or prior to the Closing, of each of the following conditions:

(a)   Representations True at Closing.   All representations of the Buyer contained herein shall be true and correct at and as of the time of the Closing as though such representations and warranties were made at and as of such time and the Buyer shall have performed and complied with all of its obligations under this Agreement and under the law which are to be complied with and performed by it prior to or at the time of the Closing.

(b)   Payment of Purchase Price.   The Buyer shall have paid and delivered to the Seller the Purchase Price (as adjusted under Section 2(c) and Section 2(f) above).

11.   Covenants of the Seller and Buyer.

(a)   Conditions Precedent.   The Trustee agrees to use her commercially reasonable efforts to provide that the conditions precedent to the Buyer's obligation to consummate the transaction contemplated by this Agreement are satisfied at the times required by this Agreement.

(b)   Buyer's Qualification.   The Buyer shall provide to Seller all cash flow projections, pro forma financial statements, capitalization information, financial commitments, and other loan documentation necessary for the determination as to the qualification of the Buyer as a bona fide purchaser of the Sale Assets, consistent with the terms of the Bid Procedures.

(c)   Hearing Date on Sale Motion.   The Trustee will seek a hearing date on the Sale Motion consistent with the terms of the Bid Procedures.

**ASSET PURCHASE AGREEMENT – Page 11**
DA-3386439 v9 2700061-00012

12.   Expenses.

       (a)   Expenses of the Seller.  The Seller shall pay for the following:

           (i)   attorneys' fees incurred by the Seller and all other fees of professionals providing services to the Debtor's estate; and

           (ii)   any other expense agreed herein to be paid by the Seller.

       (b)   Expenses of the Buyer.  The Buyer shall pay for

           (i)   attorneys' fees incurred by the Buyer;

           (ii)   any other expense agreed herein to be paid by the Buyer; and

           (iii)   sales, use or similar taxes, recording fees and charges, transfer taxes, mortgages taxes, and similar fees, costs, and taxes arising on account of the transactions contemplated herein.

13.   Prorations.

       (a)   Ad Valorem Taxes.  Ad valorem real estate and personal property taxes for the year in which the Closing occurs shall be prorated at Closing, in each case based upon applicable exemptions, and post-Closing obligations to the taxing authorities shall be assumed by the Buyer upon the Closing without the necessity of further action. Although the ad valorem real and personal property liens shall continue to attach to the Sale Assets in accordance with their priorities, nonetheless the pre-Closing ad valorem real estate and personal property tax obligations shall be paid by the Seller out of the proceeds of the sale.

       (b)   Utilities.  Utility obligations shall be determined by the utility providers through the day before Closing, and the amounts so determined owed by the Seller will be paid by the Buyer at Closing.  The Buyer shall establish new accounts and post new deposits, if required, with the utility provider.  If any bill for utility service or for any other expense of the Oil and Gas Properties prior to the Closing is received by the Buyer after the Closing, the Buyer shall, upon demand by the Trustee, reimburse the Trustee for the expense or pay such bill directly to the billing party before delinquency.

14.   Effective Date.

     The date of this Agreement (the "Effective Date") for purposes of performance shall be the date when the Sale Order becomes a Final Order; provided, however, notwithstanding the foregoing, the Buyer's agreement to perform its obligations under this Agreement shall remain irrevocable through the Closing Date pursuant to the terms and conditions of the Bid Procedures.

ASSET PURCHASE AGREEMENT – Page 12
DA-3386439 v9 2700061-00012

15.    Assignment.

This Agreement may be assigned by the Buyer to any assignee of the Buyer, which shall be a U.S. corporation or limited liability company sufficiently capitalized to satisfy its obligations hereunder as determined by the Seller.  After any such assignment, the Buyer shall have no further liability under this Agreement.

16.    Time Is of the Essence.

Time is of the essence as to all material terms of this Agreement.

17.    Broker.

The Buyer and the Seller each represents and warrants to the other that no broker or finder has been engaged by it in connection with this transaction.  If a claim for brokerage commission or other compensation in connection with this transaction is made by any broker, salesman or finder claiming to have dealt through or on behalf of one of the parties hereto, Buyer shall indemnify, defend and hold harmless the Seller, the Debtor's estate, and their respective officers, directors, agents and representatives, from all liabilities, damages, claims, costs, fees and expenses whatsoever (including reasonable attorneys' fees and court costs at trial and all appellate levels) with respect to said claim for brokerage.  Likewise, if the Seller's conduct results in a claim being made against the Buyer for payment of a commission or other compensation in connection with this transaction, the Debtor's estate shall indemnify, defend and hold harmless the Buyer, and the Buyer's officers, directors, agents and representatives, from all liabilities, damages, claims, costs, fees and expenses whatsoever (including reasonable attorneys' fees and court costs at trial and all appellate levels) with respect to said claim for brokerage fee caused by the Seller's conduct.

18.    Notices.

Any notices required or permitted to be given under this Agreement shall either be (a) delivered by hand, (b) mailed by certified or registered mail, return receipt requested, in a postage prepaid envelope, (c) sent by a nationally recognized overnight delivery service (such as Federal Express), or (d) sent by telecopy.  Notices shall be addressed as described below (subject to the right of a party to designate a different address for itself by notice similarly given).  Notices shall be deemed given upon receipt or refusal of delivery.

Notices to the Seller:        Linda Payne, Chapter 7 Trustee for Debtor's Estate
                              12770 Coit Road, Suite 541
                              Dallas, Texas 75251
                              Tel.: (972) 628-4904
                              linda@paynetrustee.com

                              -and-

                              Bill F. Payne, Esq., Chapter 7 Trustee's Counsel
                              The Moore Law Firm, L.L.P.,

ASSET PURCHASE AGREEMENT – Page 13
DA-3386439 v9 2700061-00012

12770 Coit Road, Suite 541
Dallas, Texas 75251
Tel.: (972) 628-4901
bpayne@moorefirm.com

Notices to the Buyer:
John E. Galemore
P.O. Box 151
Chanute, KS 66720
Tel.: (918) 629-1776
jvoilcompany@yahoo.com

-and-
Kurt F. Kluin, counsel for Buyer
Kluin Law Office, LLC
P.O. Box G
Chanute, KS 66720
Tel.: (620) 431-1601
kurtk@kluinlaw.com

19.   Sale of Sale Assets.

The Buyer and the Seller acknowledge and agree that this transaction is a purchase and sale of Sale Assets only and that the Buyer is not purchasing the Debtor, the Debtor's business, or any interest in the Debtor's estate.  Except as may be expressly set forth in this Agreement, the Buyer does not assume liability or responsibility for claims incurred by or existing against the Debtor or the Debtor's estate.

20.   Remedies.

(a)   Default by Buyer.  If, after (i) all conditions precedent to the Buyer's obligations hereunder (as set forth in Section 9 above) have been met or waived and (ii) the Seller has fully performed or tendered performance of all of the Seller's obligations and covenants contained in this Agreement, the Buyer thereafter fails to pay the Purchase Price provided in Section 2 above, or to otherwise conclude this transaction, then the Seller may upon forty-eight (48) hours prior written notice to the Buyer (during which time the Buyer may cure such default by complying with such obligations) terminate this Agreement and shall thereupon be entitled to retain the Earnest Money Deposit as reasonable, agreed liquidated damages for breach of this Agreement by the Buyer; the parties hereto agree that said amount is a reasonable amount for such liquidated damages and that from the nature of the subject matter it would be extremely difficult and impractical to fix that actual damage.  Upon termination of this Agreement, the retention of the Earnest Money Deposit shall then be the sole remedy available to the Seller for breach of this Agreement by the Buyer.  Further, upon termination of this Agreement by the Seller following the Buyer's default, the Seller may, at his option, consummate the second highest and best bid (the "Second Highest and Best Bid") consistent with the Bid Procedures, or any other offer.

**ASSET PURCHASE AGREEMENT – Page 14**
DA-3386439 v9 2700061-00012

(b)     <u>Default by Seller</u>.  If, after (i) all conditions precedent to the Seller's obligations hereunder (as set forth in <u>Section 10</u> above) have been met or waived, and (ii) the Buyer has fully performed or tendered performance of all of the Buyer's obligations and covenants contained in this Agreement, the Seller thereafter fails to transfer the Sale Assets as provided in <u>Section 3</u> above, or to otherwise conclude this transaction, the Buyer may upon forty-eight (48) hours prior written notice to the Seller (during which time the Seller may cure such default by complying with such obligations) either:

(i)     terminate this Agreement and, provided that the sale contemplated by the Second Highest and Best Bid has closed, the Buyer shall thereupon be entitled to the immediate payment of an amount equal to the Earnest Money Deposit as reasonable, agreed liquidated damages for breach of this Agreement by the Seller, payable as provided above; the parties hereto agree that said amount is a reasonable amount for such liquidated damages and that from the nature of the subject matter it would be extremely difficult and impractical to fix that actual damage; or

(ii)     at its own discretion grant an extension of time to the Seller to cure the impediment to closing this sale.

(c)     <u>Indemnity for Misrepresentation and Breach of Warranty</u>.  Buyer shall indemnify, defend and hold the Seller harmless from and against all actual damages, costs, losses or expenses incurred by the Seller as the direct result of any actual misrepresentation made by the Buyer and contained herein or any actual breach by the Buyer of any warranty or covenant contained herein (EVEN IF CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE (WHETHER SOLE, JOINT, CONCURRENT, ACTIVE, PASSIVE, OR OTHERWISE), STRICT LIABILITY, OR OTHER LEGAL FAULT OF THE BUYER). The Seller has made no representations or warranties under this Agreement or in any document to be executed in connection herewith. The Bankruptcy Court retains jurisdiction to resolve any disputes under this <u>Section 20</u>, and in connection with the subject matter of this Agreement.  Buyer's obligations under its representations and warranties, and this Section 20(c) shall survive the Closing without time limit.

21.     <u>Waivers</u>.

The failure of a party hereto at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same.  No waiver by a party of any condition or of any breach of any term, covenant, representation or warranty contained in this Agreement shall be effective unless in writing, and no waiver in any one or more instances shall be deemed to be a further or continuing waiver of any such condition or breach in other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty.

22.   No Third Party Beneficiaries.

This Agreement is solely for the benefit of the parties hereto and their respective affiliates and (other than provisions that expressly accrue to the benefit of Seller Group) no provision of this Agreement shall be deemed to confer upon third parties any remedy, claim, liability, reimbursement, claim of action or other right in excess of those existing without reference to this Agreement.

23.   Access. The Buyer shall have full access to all properties and premises of the Seller upon reasonable notice to the Seller, which shall be presumed to be one (1) day's notice, subject to the provisions of Section 5 above.

24.   General.

(a)   Governing Law. This Agreement shall be construed and enforced in accordance with the laws of the State of Texas, without giving effect to principles of conflicts of law.

(b)   Further Assurances. The parties hereto shall execute and deliver any and all papers and documents which may be necessary to carry out the terms of this Agreement.

(c)   Exhibits and Schedules. All of the exhibits and schedules attached to this Agreement are hereby incorporated herein and made a part hereof. Matters contained in a schedule or exhibit for one purpose shall be deemed to be contained in each schedule and exhibit.

(d)   Entire Agreement. This Agreement and the related documents referenced herein set forth the entire agreement and understanding of the parties hereto in respect to the transactions contemplated hereby; and the Agreement and such related documents supersede all prior agreements, arrangements and understandings relating to the subject matter hereof and is not intended to confer upon any other person any rights or remedies hereunder. There have been no representations or statements, oral or written, that have been relied on by any party hereto, except those expressly set forth in this Agreement or in any such related document.

(e)   Amendment. This Agreement may not be amended or revised except by a writing signed by all parties hereto.

(f)   Survival. All representations and covenants of the Buyer made in this Agreement will survive the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby.

(g)   Binding Effect. The terms and conditions of this Agreement shall be binding upon the successors, permitted assigns, distributees, administrators, executors and legal representatives of the parties hereto.

**ASSET PURCHASE AGREEMENT – Page 16**
DA-3386439 v9 2700061-00012

(h)    <u>Waiver of Terms and Conditions</u>.   Either party thereto may waive in writing any terms or conditions, including conditions precedent, provided in this Agreement for its benefit.

(i)    <u>Execution in Counterparts; Electronic Execution</u>.    This Agreement may be executed in counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of this Agreement by telefacsimile, ".pdf file" or other electronic method of transmission shall be equally as effective as delivery of an originally executed counterpart of this Agreement.  Any party delivering an executed counterpart of this Agreement by telefacsimile, ".pdf file" or other electronic method of transmission also shall deliver an originally executed counterpart of this Agreement but the failure to deliver an originally executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

SELLER:

Date Signed: October __22__, 2015

LINDA PAYNE, SOLELY IN HER
CAPACITY AS THE CHAPTER 7
TRUSTEE OF DEBTOR'S ESTATE

By: _____
Name:   Linda Payne
Title:    Chapter 7 Trustee of Debtor's Estate

Date Signed: October __22__, 2015

BUYER:

JOHN E. GALEMORE

_____
John E. Galemore

Exhibits:

    A – Oil and Gas Properties
    B - Form of Assignment and Bill of Sale

ASSET PURCHASE AGREEMENT – Page 18
DA-3386439 v9 2700061-00012

EXHIBIT "A"

OIL AND GAS PROPERTIES

[see attached]

**Legal Description**

1.    THE WINDGRAVE LEASE

    A.    AN OIL AND GAS LEASE DATED SEPTEMBER 1, 1953 FROM JOHN F. WINGRAVE AND HAZEL B. WINGRAVE, HIS WIFE, TO E.O. LYNN, RECORDED IN BOOK 25 AT PAGE 319 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING DESCRIBED REAL ESTATE:

THE NORTHEAST QUARTER (NE/4) OF SECTION 17, TOWNSHIP 24 SOUTH, RANGE 16 EAST; AND THE NORTHWEST QUARTER (NW/4) AND THE NORTH HALF OF THE SOUTHWEST QUARTER (N/2 SW/4), AND THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER (SW/4 SW/4) AND THE NORTH HALF OF THE SOUTHEAST QUARTER (N/2 SE/2) AND THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER (SE/4 SE/4), OF SECTION 16, TOWNSHIP 24 SOUTH, RANGE 16 EAST, WOODSON COUNTY, KANSAS.

    B.    AN OIL AND GAS LEASE DATED APRIL 20, 1990 FROM LOUISE SANDLIN TO H&G PULLING CO. INC. RECORDED IN BOOK 70 AT PAGE 546 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING DESCRIBED REAL ESTATE:

THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER (NW/4 SE/4) OF SECTION 16, TOWNSHIP 24 SOUTH, RANGE 16 EAST, WOODSON COUNTY, KANSAS.

    C.    AN OIL AND GAS LEASE DATED JUNE 18, 1977 FROM JOHN F. WINGRAVE A/K/A J.F. WINGRAVE AND HAZEL B. WINGRAVE, HUSBAND AND WIFE TO H&G PULLING AND ROTARY DRILLING CO., RECORDED IN BOOK 46 AT PAGE 716 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING DESCRIBED REAL ESTATE:

THE SOUTH HALF OF THE NORTHEAST QUARTER (S/2 NE/4) OF SECTION 16, TOWNSHIP 24 SOUTH, RANGE 16 EAST, WOODSON COUNTY, KANSAS.

2.    THE KARMANN LEASE

    AN OIL AND GAS LEASE DATED SEPTEMBER 18, 2009, FROM ERIK SHANE KARMANN AS LESSOR, TO JT OPERATIONS AS LESSEE, RECORDED IN BOOK S91 AT PAGE 225 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING REAL ESTATE:

THE NORTHWEST QUARTER (NW/4) OF SECTION TWENTY-ONE (21), TOWNSHIP TWENTY-FOUR (24), RANGE SIXTEEN (16), WOODSON COUNTY, KANSAS, AND CONTAINING 160 ACRES MORE OR LESS.

DA-3386439 v9 2700061-00012

3.    THE LIGHT LEASE

AN OIL AND GAS LEASE DATED FEBRUARY 15, 1977, FROM FREDA A. LIGHT, ETAL., TO BERYL ASHLOCK, RECORDED IN BOOK 46 OF LEASES AT PAGE 662 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING DESCRIBED REAL ESTATE:

THE SOUTH HALF OF THE NORTHEAST QUARTER (S/2 NE/4) OF SECTION 1, TOWNSHIP 24, RANGE 14, WOODSON COUNTY, KANSAS.

4.    THE STOCKEBRAND LEASE

AN OIL AND GAS LEASE DATED FEBRUARY 15, 1977, FROM NORMA J. WIMMER, ET AL, TO BERYL ASHLOCK, RECORDED IN BOOK 46 OF LEASES AT PAGE 660 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING DESCRIBED REAL ESTATE:

THE NORTHWEST QUARTER (NW/4) OF SECTION 1, TOWNSHIP 24, RANGE 14, WOODSON COUNTY, KANSAS.

A-2

DA-3386439 v9 2700061-00012

**Equipment**

| | |
|---|---|
| WINGRAVE PASTURE PUMP HOUSE | Woodson County, Kansas |
| JOHN WINGRAVE PUMP HOUSE | Woodson County, Kansas |
| STOCKEBRAND PUMP HOUSE | Woodson County, Kansas |
| WINGRAVE SEPARATOR | Woodson County, Kansas |
| WINDGRAVE TANK BATTERY | Woodson County, Kansas |
| WINDGRAVE WATER TANKS | Woodson County, Kansas |
| J WINDGRAVE SEPARATOR | Woodson County, Kansas |
| J WINDGRAVE TANK BATTERY | Woodson County, Kansas |
| J WINDGRAVE WATER TANK | Woodson County, Kansas |
| LIGHT SEPARATOR | Woodson County, Kansas |
| LIGHT TANK BATTERY | Woodson County, Kansas |
| STOCKEBRAND SEPARATOR | Woodson County, Kansas |
| STOCKEBRAND TANK BATTERY | Woodson County, Kansas |
| STOCKEBRAND WATER TANK | Woodson County, Kansas |
| KARMANN SEPARATOR | Woodson County, Kansas |
| KARMANN TANK BATTERY | Woodson County, Kansas |
| KARMANN WATER TANK | Woodson County, Kansas |
| WINGRAVE WATER TANK # 2 | Woodson County, Kansas |

A-3

Armada Midcontinent, LLC
Kansas Wells

| Lease Name | Well No. | API Number | Year Drilled | Depth | County | Well Type | Well Status |
|---|---|---|---|---|---|---|---|
| KARMANN | 01-10 | 15-207-27702-0000 | 2010 | 1082 | Woodson | OIL | PR |
| KARMANN | 02-10 | 15-207-27612-0000 | 2010 | 1095 | Woodson | OIL | PR |
| KARMANN | 03-10 | 15-207-27613-0000 | 2010 | 1095 | Woodson | OIL | PR |
| KARMANN | 04-09 | 15-207-27607-0000 | 2010 | 1095 | Woodson | OIL | PR |
| KARMANN | 05-09 | 15-207-27605-0000 | 2010 | 1100 | Woodson | OIL | PR |
| KARMANN | 08-10 | 15-207-27623-0000 | 2010 | 1095 | Woodson | OIL | PR |
| KARMANN | 36-10 | 15-207-27606-0000 | 2010 | 1095 | Woodson | OIL | PR |
| LIGHT | 1 | 15-207-21164-0000 | unknown | 1670 | Woodson | OIL | PR |
| Light | 1-11 | 15-207-27911-0000 | 2011 | 1655 | Woodson | OIL | PR |
| Light | 10-13 | 15-207-28645-0000 | 2013 | 1282 | Woodson | OIL | PR |
| Light | 2-12 | 15-207-28444-0000 | 2013 | 1635 | Woodson | OIL | PR |
| Light | 3-12 | 15-207-28445-0000 | 2013 | 1625 | Woodson | OIL | PR |
| Light | 4-12 | 15-207-28446-0000 | 2013 | 1620 | Woodson | OIL | PR |
| Light | 5-12 | 15-207-28447-0000 | 2013 | 1630 | Woodson | OIL | PR |
| Light | 6-13 | 15-207-28586-0000 | 2013 | 1277 | Woodson | OIL | PR |
| Light | 7-13 | 15-207-28587-0000 | 2013 | 1630 | Woodson | OIL | PR |
| Light | 8-13 | 15-207-28643-0000 | 2013 | 1630 | Woodson | OIL | PR |
| Light | 9-13 | 15-207-28644-0000 | 2013 | 1674 | Woodson | OIL | PR |
| STOCKEBRAND | 1 | 15-207-21163-0001 | unknown | 1626 | Woodson | SWD | AI |
| STOCKEBRAND | 1 W | 15-207-21200-0000 | unknown | 1626 | Woodson | OIL | IN |
| Stockebrand | 1-11 | 15-207-27902-0000 | 2011 | 1690 | Woodson | OIL | IN |
| Stockebrand | 2-12 | 15-207-28199-0000 | 2012 | 1678 | Woodson | OIL | PR |
| Stockebrand | 4-12 | 15-207-28145-0000 | 2012 | 1680 | Woodson | OIL | PR |
| WINGRAVE | 01-05 | 15-207-26920-0000 | 2005 | 1071 | Woodson | OIL | PR |
| WINGRAVE | 02-04 | 15-207-26849-0000 | 2004 | 1050 | Woodson | OIL | PR |
| WINGRAVE | 03-07 | 15-207-27233-0000 | 2007 | 1100 | Woodson | OIL | PR |
| WINGRAVE | 04-05 | 15-207-26885-0000 | 2005 | 1100 | Woodson | EOR | AI |
| WINGRAVE | 05-08 | 15-207-27394-0000 | 2008 | 1102 | Woodson | OIL | PR |
| WINGRAVE | 06-04 | 15-207-26848-0000 | 2004 | 1041 | Woodson | OIL | PR |
| WINGRAVE | 07-04 | 15-207-26850-0000 | 2004 | 1061 | Woodson | OIL | PR |
| WINGRAVE | 08-04 | 15-207-26852-0001 | unknown | 1087 | Woodson | EOR | AI |
| WINGRAVE | 08-09 | 15-207-27484-0000 | 2009 | 1072 | Woodson | OIL | PR |
| WINGRAVE | 1 | 15-207-02555-0001 | unknown | 1030 | Woodson | OIL | PR |
| WINGRAVE | 1 WE | 15-207-24918-0000 | 1984 | 1220 | Woodson | SWD | AI |
| WINGRAVE | 12-05 | 15-207-26923-0000 | 2005 | 1100 | Woodson | OIL | PR |
| WINGRAVE | 13-05 | 15-207-26886-0000 | 2005 | 1130 | Woodson | OIL | PR |
| WINGRAVE | 14-05 | 15-207-26924-0000 | 2005 | 1104 | Woodson | OIL | PR |
| WINGRAVE | 15-06 | 15-207-26978-0000 | 2006 | 1100 | Woodson | OIL | PR |
| WINGRAVE | 17 | 15-207-24452-0000 | unknown | 1060 | Woodson | EOR | AI |
| WINGRAVE | 18-97 | 15-207-26382-0000 | 1997 | 1100 | Woodson | OIL | PR |
| WINGRAVE | 19-97 | 15-207-26383-0000 | 1997 | 1100 | Woodson | OIL | PR |
| WINGRAVE | 20-97 | 15-207-26386-0000 | 1997 | 1080 | Woodson | EOR | AI |
| WINGRAVE | 21-00 | 15-207-26723-0000 | 2000 | 1120 | Woodson | OIL | PR |
| WINGRAVE | 21-07 | 15-207-27224-0000 | 2007 | 1120 | Woodson | OIL | PR |
| WINGRAVE | 22-00 | 15-207-26722-0000 | 2000 | 1120 | Woodson | OIL | PR |
| WINGRAVE | 22-06 | 15-207-27057-0000 | 2006 | 1110 | Woodson | OIL | PR |
| WINGRAVE | 22-07 | 15-207-27232-0000 | 2007 | 1128 | Woodson | OIL | PR |
| WINGRAVE | 23-06 | 15-207-27056-0000 | 2006 | 1110 | Woodson | OIL | PR |
| WINGRAVE | 24-08 | 15-207-27395-0000 | 2008 | 1101 | Woodson | OIL | PR |
| WINGRAVE | 25-09 | 15-207-27485-0000 | 2009 | 1112 | Woodson | OIL | PR |
| WINGRAVE | 26-09 | 15-207-27530-0000 | 2009 | 1101 | Woodson | OIL | PR |
| WINGRAVE | 27-09 | 15-207-27531-0000 | 2009 | 1101 | Woodson | OIL | PR |
| WINGRAVE | 28-10 | 15-207-27710-0000 | 2010 | 1110 | Woodson | OIL | PR |
| WINGRAVE | 30-09 | 15-207-27532-0000 | 2009 | 1080 | Woodson | OIL | PR |
| WINGRAVE | 31-09 | 15-207-27548-0000 | 2010 | 1115 | Woodson | OIL | PR |
| WINGRAVE | 32-10 | 15-207-27708-0000 | 2010 | 1108 | Woodson | OIL | PR |
| WINGRAVE | 33-10 | 15-207-27707-0000 | 2010 | 1102 | Woodson | OIL | PR |
| WINGRAVE | 34-10 | 15-207-27733-0000 | 2010 | 1062 | Woodson | OIL | PR |
| WINGRAVE | 35-10 | 15-207-27745-0000 | 2010 | 1062 | Woodson | OIL | PR |
| WINGRAVE | 8 | 15-207-02556-0001 | unknown | 1030 | Woodson | OIL | PR |
| WINGRAVE | WGG 1-05 | 15-207-26919-0000 | 2005 | 1090 | Woodson | OIL | PR |

A-4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WINGRAVE | WGG 2-06 | 15-207-26975-0000 | 2006 | 1060 | Woodson | OIL | PR |
| WINGRAVE | WGG 3-09 | 15-207-27486-0000 | 2009 | 1062 | Woodson | OIL | PR |
| WINGRAVE | WGG 4-09 | 15-207-27487-0000 | 2009 | 1062 | Woodson | OIL | PR |
| Wingrave | 06-12 | 15-207-28486-0000 | 2013 | 1043 | Woodson | OIL | PR |
| Wingrave | 1 | 15-207-19182-0000 | unknown | 1016 | Woodson | OIL | PR |
| Wingrave | 22 | 15-207-19303-0000 | unknown | 1030 | Woodson | OIL | PR |
| Wingrave | 23 | 15-207-19304-0000 | unknown | 1030 | Woodson | OIL | PR |
| Wingrave | 24 | 15-207-19305-0000 | unknown | 1030 | Woodson | OIL | PR |
| Wingrave | 3 | 15-207-19284-0000 | unknown | 1360 | Woodson | OIL | PR |
| Wingrave | 36-10 | 15-207-27762-0000 | 2010 | 1082 | Woodson | OIL | PR |
| Wingrave | 37-10 | 15-207-27763-0000 | 2010 | 1082 | Woodson | OIL | PR |
| Wingrave | 39-10 | 15-207-27764-0000 | 2010 | 1082 | Woodson | OIL | PR |
| Wingrave | 40-11 | 15-207-27893-0000 | 2011 | 1102 | Woodson | OIL | PR |
| Wingrave | 41-11 | 15-207-27894-0000 | 2011 | 1102 | Woodson | OIL | PR |
| Wingrave | 42-11 | 15-207-27895-0000 | 2011 | 1102 | Woodson | OIL | PR |
| Wingrave | 43-11 | 15-207-27896-0000 | 2011 | 1102 | Woodson | OIL | PR |
| Wingrave | 45-11 | 15-207-27954-0000 | 2011 | 1096 | Woodson | OIL | PR |
| Wingrave | 46-11 | 15-207-27955-0000 | 2011 | 1096 | Woodson | OIL | PR |
| Wingrave | 47-11 | 15-207-27956-0000 | 2011 | 1070 | Woodson | OIL | PR |
| Wingrave | 48-11 | 15-207-27957-0000 | 2011 | 1070 | Woodson | OIL | PR |
| Wingrave | 49-11 | 15-207-27963-0000 | 2011 | 1090 | Woodson | OIL | PR |
| Wingrave | 50-11 | 15-207-27970-0000 | 2011 | 1068 | Woodson | OIL | PR |
| Wingrave | 51-11 | 15-207-27971-0000 | 2011 | 1070 | Woodson | OIL | PR |
| Wingrave | 52-11 | 15-207-27976-0000 | 2011 | 1102 | Woodson | OIL | PR |
| Wingrave | 53-11 | 15-207-27977-0001 | unknown | 1075 | Woodson | EOR | AI |
| Wingrave | 54-11 | 15-207-27983-0000 | 2011 | 1090 | Woodson | OIL | PR |
| Wingrave | 55-12 | 15-207-28073-0000 | 2012 | 1106 | Woodson | OIL | PR |
| Wingrave | 56-12 | 15-207-28078-0000 | 2012 | 1088 | Woodson | OIL | PR |
| Wingrave | 57-12 | 15-207-28084-0000 | 2012 | 1103 | Woodson | OIL | PR |
| Wingrave | 58-12 | 15-207-28085-0000 | 2012 | 1102 | Woodson | OIL | PR |
| Wingrave | 59-12 | 15-207-28121-0000 | 2012 | 1073 | Woodson | OIL | PR |
| Wingrave | 60-12 | 15-207-28313-0000 | 2012 | 1067 | Woodson | OIL | PR |
| Wingrave | 61-12 | 15-207-28430-0000 | 2012 | 1100 | Woodson | OIL | PR |
| Wingrave | 62-12 | 15-207-28464-0000 | 2013 | 1047 | Woodson | OIL | PR |
| Wingrave | 63-12 | 15-207-28465-0000 | 2013 | 1088 | Woodson | OIL | PR |
| Wingrave | 64-13 | 15-207-28663-0000 | 2013 | 1081 | Woodson | OIL | PR |
| Wingrave | 65-13 | 15-207-28664-0000 | 2013 | 1112 | Woodson | OIL | PR |
| Wingrave | 66-13 | 15-207-28666-0000 | 2013 | 1116 | Woodson | OIL | PR |
| Wingrave | 67-13 | 15-207-28667-0000 | 2013 | 1107 | Woodson | OIL | PR |
| Wingrave | 68-13 | 15-207-28712-0000 | 2013 | 1055 | Woodson | OIL | PR |
| Wingrave | 69-13 | 15-207-28731-0000 | 2013 | 1056 | Woodson | OIL | PR |
| Wingrave | 70-13 | 15-207-28732-0000 | 2013 | 1066 | Woodson | OIL | PR |
| Wingrave | 71-13 | 15-207-28735-0000 | 2013 | 1081 | Woodson | OIL | PR |
| Wingrave | 72-13 | 15-207-28736-0000 | 2013 | 1081 | Woodson | OIL | PR |
| Wingrave | 76-13 | 15-207-28803-0000 | 2013 | 1082 | Woodson | OIL | PR |
| Wingrave | 77-13 | 15-207-28802-0000 | 2013 | 1070 | Woodson | OIL | PR |
| Wingrave | WGG 5-11 | 15-207-27958-0000 | 2011 | 1072 | Woodson | OIL | PR |
| wingrave | 10 | 15-207-19291-0000 | unknown | 1029 | Woodson | OIL | PR |
| wingrave | 11 | 15-207-19292-0000 | unknown | 1024 | Woodson | OIL | PR |
| wingrave | 12 | 15-207-19293-0000 | unknown | 1023 | Woodson | OIL | PR |
| wingrave | 13 | 15-207-19294-0000 | unknown | 1063 | Woodson | OIL | PR |
| wingrave | 14 | 15-207-19295-0000 | unknown | 1063 | Woodson | OIL | PR |
| wingrave | 16 | 15-207-19297-0000 | unknown | 1036 | Woodson | OIL | PR |
| wingrave | 17 | 15-207-19298-0000 | unknown | 1040 | Woodson | OIL | PR |
| wingrave | 18 | 15-207-19299-0000 | unknown | 1030 | Woodson | OIL | PR |
| wingrave | 19 | 15-207-19300-0000 | unknown | 1030 | Woodson | OIL | PR |
| wingrave | 21 | 15-207-19302-0000 | unknown | 1030 | Woodson | OIL | PR |
| wingrave | 26 | 15-207-19307-0000 | unknown | 1030 | Woodson | OIL | PR |
| wingrave | 4 | 15-207-19285-0000 | unknown | 1036 | Woodson | OIL | PR |
| wingrave | 5 | 15-207-19286-0000 | unknown | 1184 | Woodson | OIL | PR |
| wingrave | 6 | 15-207-19287-0000 | unknown | 1030 | Woodson | OIL | PR |
| wingrave | 7 | 15-207-19288-0000 | unknown | 1016 | Woodson | OIL | PR |
| wingrave | 8 | 15-207-19289-0000 | unknown | 1048 | Woodson | OIL | PR |
| wingrave | 9 | 15-207-19290-0000 | unknown | 1062 | Woodson | OIL | PR |

A-5

## EXHIBIT "B"

### FORM OF ASSIGNMENT AND BILL OF SALE

[see attached]

## ASSIGNMENT AND BILL OF SALE

This Assignment and Bill of Sale (this "Assignment") from Linda Payne (the "Grantor" or the "Trustee"), on behalf of, and solely in her capacity as the duly appointed Chapter 7 Trustee for the bankruptcy estate of Armada Midcontinent, LLC (the "Debtor"), and Laymon Oil II, LLC, a Kansas limited liability company ("Grantee," and, together with Grantor, collectively, the "Parties") is dated as of the dates set forth in the respective notary certifications below, but effective as of [_____], 2015 (the "Effective Date").

### RECITALS

WHEREAS, on August 28, 2015 the Debtor filed its voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court"), in Bankruptcy Case No. 15-41557;

WHEREAS, thereafter, Linda Payne was appointed as the Chapter 7 Trustee for the Debtor's estate;

WHEREAS, on October 23, 2015, the Trustee filed her motion (the "Sale Motion") seeking to sell substantially all of the assets of the Debtor's estate free and clear of all liens, claims, encumbrances, and interests (other than liens, claims, encumbrances, and interest that are not property of the estate of Debtor under Section 541 of the Bankruptcy Code) pursuant to a sale other than in the ordinary course of the Debtor's business, under Section 363(f) of the Bankruptcy Code;

WHEREAS, on October 22, 2015, a certain Asset Purchase Agreement (the "Purchase Agreement"), was entered into by and between Grantor and John E. Galemore ("Galemore"), which Purchase Agreement was subsequently assigned to Grantee pursuant to that certain Assignment and Assumption of Asset Purchase Agreement, dated October 23, 2015, by and between Galemore, as assignor, and Grantee, as assignee;

1

WHEREAS, pursuant to the Purchase Agreement, Grantor has agreed to assign to Grantee all of the Grantor's right, title, and interest in and to the Sale Assets (capitalized terms not otherwise defined herein shall have the meaning set forth in the Purchase Agreement), save and except the Excluded Assets; and

WHEREAS, on _____, 2015, the Bankruptcy Court entered an Order (the "Sale Order") approving the Sale Motion and the sale of the Sale Assets to Grantee, and such Sale Order has not been stayed.

## ASSIGNMENT

Section 1.    **Assignment.**  NOW THEREFORE, Grantor, for and in consideration of the foregoing, the mutual promises and agreements herein, and other good and valuable consideration, in hand paid, the receipt and sufficiency of which is hereby acknowledged, hereby GRANTS, BARGAINS, SELLS, AND CONVEYS, and by these presents has GRANTED, BARGAINED, SOLD, AND CONVEYED unto Grantee all right, title, and interest of Grantor in and to the following (collectively, the "Sale Assets"):

(a)    Oil and Gas Properties.  Fee interests, leasehold interests, licenses, concessions, working interests, farmout rights, royalty, overriding royalty or other non working or carried interests, operating rights or other mineral rights of every nature and any rights that arise by operation of law or otherwise in all properties and lands pooled, unitized, communitized or consolidated with such properties, including without limitation all interest (of whatever kind or character, whether legal or equitable, and whether vested or contingent) of the Debtor in and to (i) the Oil and Gas Leases described on Exhibit "A" hereto (the "Leases"), (ii) the lands covered by the Leases or otherwise described on Exhibit "A" hereto, the Leases and lands included in any units with which the Leases or the lands covered thereby or otherwise described on Exhibit "A" hereto may have been pooled, unitized or commingled and (iii) the oil, gas and other minerals in and under or that may be produced from the lands covered by the Leases or otherwise described on Exhibit "A" hereto, whether such lands be described on a description set forth on Exhibit "A" hereto or described on Exhibit "A" hereto by reference to another instrument and whether the Debtor's interest therein is correctly or incorrectly described on Exhibit "A" hereto or such referenced instrument (collectively, the "Oil and Gas Properties"); the term Oil and Gas Properties shall be deemed to include all Wells);

(b)    Wells. All production, injection, disposal, and other wells located on or used in connection with the operation of the Oil and Gas Properties, whether or not plugged and abandoned;

(c)    Equipment.  All equipment, machinery, fixtures, physical assets and facilities, pipe, inventory, improvements, and other personal, mixed, or movable property or interests whether located on or off the lands covered by the Leases, used in connection with the ownership or operation of the Oil and Gas Properties (except for any such personal property leased from Third Parties) including the equipment, machinery fixtures, physical assets and facilities, pipe, fixtures, inventory, improvements, and other personal, mixed or movable property or interests set forth on Exhibit "A" hereto;

2

(d)    Hydrocarbons.  All oil, gas, other liquid or gaseous hydrocarbons, and all products refined therefrom ("Hydrocarbons") produced from the Oil and Gas Properties (including wells) and all proceeds attributable thereto, in each case, on and after the Effective Date (as defined in Section 14 of the Agreement), or in storage and on the Effective Date;

(e)    Surface Rights.  All fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements, as the same may exist, and similar rights and interests (if any) located on or with respect to the lands covered by the Leases or otherwise described in clause (a) above or that otherwise relate to the interests of the Debtor described in clauses (a) and (b) above; and

(f)    Intangible Property.  All of the Debtor's business records, historical records, and archived business records relating to the operation of its business, and all goodwill of the operation of its business, but excluding any legally privileged records, if any, as determined by the Trustee in her sole discretion (the "Intangible Property").

Section 2.    **Excluded Assets.**  Notwithstanding the foregoing, the Sale Assets shall not include, and there is excepted, reserved and excluded from the transaction contemplated hereby (collectively, the "Excluded Assets"):

(a)    All cash, cash deposits or cash equivalents of the Debtor's estate;

(b)    All right, title, and interest of the Debtor's estate in and to its accounts and other receivables (other than accounts and receivables attributable to the sale of hydrocarbons after the Effective Date and for which the Purchase Price is not adjusted upwards pursuant to Section 2 of the Purchase Agreement);

(c)    All claims and causes of action of the Debtor's estate, including any and all claims owned by, through, or under the Debtor or the Debtor's estate (including, without limitation, any litigation or arbitration claims and any refunds and deposits), rights, rights of offset or causes of action that the Debtor's estate may have against or from any person or entity relating to (i) any of the Excluded Assets; (ii) those arising under and relating to the Bankruptcy Code, including under Chapter 5 of the Bankruptcy Code; (iii) any rights under any insurance policy, any and all claims and causes of action belonging to the Debtor's estate; and (iv) the Debtor's former employees, officers, or directors;

(d)    All claims and causes of action of the Debtor's estate, including any and all claims owned by, through, or under the Debtor or the Debtor's estate that may be asserted against parties who may execute the Purchase Agreement and participate in the sale process resulting in the Purchase Agreement, including any claims to the extent of such parties' failure to close any transactions thereunder, together with all rights of the Debtor's estate under the Purchase Agreement or any other agreements or instruments otherwise delivered in connection with the Purchase Agreement, to the extent that such parties may be in breach of their agreements with the Debtor's estate and such claims or causes of action may exist or hereafter arise;

(e)    Originals of all corporate, financial and tax records of the Debtor's estate, including, without limitation, the Debtor's organizational documents, and other documents and

3

DA-3389414 v8 2700061-00012

instruments relating solely to the organization, maintenance and existence of the Debtor as a limited liability company (and the Grantee may obtain copies of all such records at its own expense); and

(f)    Any tax refunds, overpayments for utility charges, and insurance premium refunds due the Debtor's estate.

Section 3.    **"As-Is, Where-Is"**.  THE GRANTEE ACKNOWLEDGES THAT EXCEPT FOR ANY EXPRESS WARRANTIES AND REPRESENTATIONS CONTAINED IN THIS ASSIGNMENT, THE GRANTEE IS NOT RELYING ON ANY WRITTEN, ORAL, IMPLIED OR OTHER REPRESENTATIONS, STATEMENTS OR WARRANTIES BY THE GRANTOR, THE DEBTOR'S ESTATE, OR ANY MEMBER OF THE GRANTOR GROUP (AS DEFINED BELOW).  GRANTOR MAKES NO, AND EXPRESSLY DISCLAIMS AND NEGATES, ANY REPRESENTATION OR WARRANTY, WHETHER EXPRESS, IMPLIED, OR STATUTORY, AS TO TITLE TO ANY OF THE SALE ASSETS.  EXCEPT AS EXPRESSLY SET FORTH IN THIS ASSIGNMENT, THE GRANTOR, THE DEBTOR'S ESTATE, AND EACH MEMBER OF THE GRANTOR GROUP SHALL HAVE NO LIABILITY TO THE GRANTEE, AND GRANTEE HEREBY RELEASES, AND AGREES TO INDEMNIFY, DEFEND, AND HOLD HARMLESS, THE GRANTOR, THE DEBTOR'S ESTATE, THE DEBTOR'S LENDER AND EACH OF THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, AND ATTORNEYS (THE "GRANTOR GROUP"), FROM ANY LIABILITY ARISING UNDER OR IN ANY WAY RELATED TO THIS ASSIGNMENT, EVEN IF CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE (WHETHER ACTIVE, PASSIVE, CONCURRENT, OR OTHERWISE), STRICT LIABILITY, OR OTHER LEGAL FAULT OF ANY MEMBER OF GRANTOR GROUP.  EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER THE GRANTOR, THE DEBTOR'S ESTATE, NOR ANY MEMBER OF THE GRANTOR GROUP HAS MADE, AND THE GRANTEE DOES EXPRESSLY DISCLAIM, ANY WARRANTIES AND REPRESENTATIONS, EXPRESSED OR IMPLIED, OR ARISING BY OPERATION OF LAW, AS TO THE MERCHANTABILITY, HABITABILITY, QUANTITY, QUALITY, VALUE (INCLUDING ANY STEP-OUT DRILLING OPPORTUNITIES) OR ENVIRONMENTAL CONDITION OF THE SALE ASSETS, THE SALE ASSETS' SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, OR WHETHER PRODUCTION THEREFROM HAS BEEN IN PAYING OR COMMERCIAL QUANTITIES OVER ANY PERIOD OF TIME.  THE GRANTEE HEREBY ACCEPTS THE SALE ASSETS IN THEIR PRESENT CONDITION ON AN "AS IS", "WHERE IS" AND "WITH ALL FAULTS" BASIS AND ACKNOWLEDGES THAT (i) WITHOUT THIS ACCEPTANCE, THIS SALE WOULD NOT BE MADE, AND (ii) NO MEMBER OF THE GRANTOR GROUP SHALL BE UNDER ANY OBLIGATION WHATSOEVER TO UNDERTAKE ANY REPAIR, ALTERATION, REMEDIATION OR OTHER WORK OF ANY KIND WITH RESPECT TO ANY PORTION OF THE SALE ASSETS.

Section 4.    **Further Assurances**.  From and after the date hereof, Grantor, without further consideration, shall execute, deliver, and (if applicable) file of record, or cause to be executed, delivered, and filed or recorded, such good and sufficient instruments of conveyance

4

and transfer, and take such other action as may be reasonably required to effectively vest in Grantee beneficial and record title to the Sale Assets and, if applicable, put Grantee in actual possession of such Sale Assets. After the date hereof, the Parties shall, without further consideration, execute, deliver and (if applicable) file of record, or caused to be executed, delivered, and filed or recorded, all instruments, and take such other actions, as may be reasonably necessary to accomplish the conveyance and transfer of the Sale Assets, any change in operator, and otherwise consummate the transactions contemplated by this Assignment and the Purchase Agreement.

Section 5.   **Assignment Subject to Purchase Agreement**.  This Assignment is expressly subject to the terms and conditions of the Purchase Agreement, which terms are hereby incorporated into this Assignment for all purposes. In the event of a conflict between the terms of this Assignment and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall control and govern.

Section 6.   **Successors and Assigns**.  This Assignment shall bind and inure to the benefit of the Parties and their respective successors and assigns.

Section 7.   **Titles and Captions**.  All Section titles and captions in this Assignment are for convenience only, shall not be deemed part of this Assignment, and shall not define, limit, extend, or describe the scope or intent of any provision hereof.

Section 8.   **Governing Law**.  Except to the extent the Laws of another jurisdiction will, under principles of conflicts of law, govern transfers of Sale Assets located in such other jurisdiction, this Assignment and the rights of the Parties hereunder shall be governed by, and construed in accordance with, the Laws of the State of Texas.

Section 9.   **Counterparts**.  This Assignment may be executed in counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

DA-3389414 v8 2700061-00012

EXECUTED as of the date set forth in the notary certifications below, but effective for all purposes as of the Effective Date.

**Linda Payne, solely in her capacity as the Chapter 7 Trustee of the Debtor's Estate**

By: _____
Name: Linda Payne
Title:   Chapter 7 Trustee of the Debtor's Estate

**GRANTEE**

**LAYMON OIL II, LLC, a Kansas limited liability company**

By: _____
        Kenneth W. Laymon, Managing Member

DA-3389414 v8 2700061-00012

STATE OF [_____]

COUNTY OF [_____]


On such date, before me, _____, the undersigned authority, a Notary Public, duly qualified, commissioned, sworn, and acting in and for the county and state aforesaid, personally came and appeared Linda Payne, to me personally known, who, duly sworn, did say that she is Linda Payne, the Chapter 7 Trustee for the Debtor's Estate, and the foregoing instrument was signed on behalf of said individual as the Chapter 7 Trustee for the Debtor's Estate and executed for the uses, purposes, and considerations therein stated, with full authority to execute said instrument, and acknowledged said instrument to the free act and deed of said individual as the Chapter 7 Trustee for the Debtor's Estate.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, in the city of _____, County of _____, State of Texas, this ___ day of ____, 2015.


_____

Notary Public in and for the State of Texas


_____

Name as it appears on notarial commission


My appointment expires:

(Affix Stamp)

DA-3389414 v8 2700061-00012

STATE OF KANSAS,

COUNTY OF _____:


On such date, before me, the undersigned authority, a Notary Public, duly qualified, commissioned, sworn, and acting in and for the county and state aforesaid, personally came and appeared Kenneth W. Laymon, to me personally known, who, duly sworn, did say that he is the Managing Member of LAYMON OIL II, LLC, a Kansas limited liability company, and the foregoing instrument was signed on behalf of said LAYMON OIL II, LLC and executed for the uses, purposes, and considerations therein stated, with full authority to execute said instrument, and acknowledged said instrument to the free act and deed of said limited liability company.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, in the city of _____, County of _____, State of Kansas, this _____ day of _____, 2015.


_____
Notary Public in and for the State of Kansas


_____
Name as it appears on notarial commission

My appointment expires:

(Affix Stamp)

# EXHIBIT "A"

## OIL AND GAS PROPERTIES

**[see attached]**

## Legal Description

1.     THE WINGRAVE LEASE

A.     AN OIL AND GAS LEASE DATED SEPTEMBER 1, 1953 FROM JOHN F. WINGRAVE AND HAZEL B. WINGRAVE, HIS WIFE, TO E.O. LYNN, RECORDED IN BOOK 25 AT PAGE 319 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING DESCRIBED REAL ESTATE:

THE NORTHEAST QUARTER (NE/4) OF SECTION 17, TOWNSHIP 24 SOUTH, RANGE 16 EAST; AND THE NORTHWEST QUARTER (NW/4) AND THE NORTH HALF OF THE SOUTHWEST QUARTER (N/2 SW/4), AND THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER (SW/4 SW/4) AND THE NORTH HALF OF THE SOUTHEAST QUARTER (N/2 SE/4) AND THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER (SE/4 SE/4), OF SECTION 16, TOWNSHIP 24 SOUTH, RANGE 16 EAST, WOODSON COUNTY, KANSAS.

B.     AN OIL AND GAS LEASE DATED APRIL 20, 1990 FROM LOUISE SANDLIN TO H&G PULLING CO. INC. RECORDED IN BOOK 70 AT PAGE 546 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING DESCRIBED REAL ESTATE:

THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER (NW/4 SE/4) OF SECTION 16, TOWNSHIP 24 SOUTH, RANGE 16 EAST, WOODSON COUNTY, KANSAS.

C.     AN OIL AND GAS LEASE DATED JUNE 18, 1977 FROM JOHN F. WINGRAVE A/K/A J.F. WINGRAVE AND HAZEL B. WINGRAVE, HUSBAND AND WIFE TO H&G PULLING AND ROTARY DRILLING CO., RECORDED IN BOOK 46 AT PAGE 716 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING DESCRIBED REAL ESTATE:

THE SOUTH HALF OF THE NORTHEAST QUARTER (S/2 NE/4) OF SECTION 16, TOWNSHIP 24 SOUTH, RANGE 16 EAST, WOODSON COUNTY, KANSAS.

2.     THE KARMANN LEASE

AN OIL AND GAS LEASE DATED SEPTEMBER 18, 2009, FROM ERIK SHANE KARMANN AS LESSOR, TO JT OPERATIONS AS LESSEE, RECORDED IN BOOK S91 AT PAGE 225 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING REAL ESTATE:

THE NORTHWEST QUARTER (NW/4) OF SECTION TWENTY-ONE (21), TOWNSHIP TWENTY-FOUR (24), RANGE SIXTEEN (16), WOODSON COUNTY, KANSAS, AND CONTAINING 160 ACRES MORE OR LESS.

3.   THE LIGHT LEASE

AN OIL AND GAS LEASE DATED FEBRUARY 15, 1977, FROM FREDA A. LIGHT, ETAL., TO BERYL ASHLOCK, RECORDED IN BOOK 46 OF LEASES AT PAGE 662 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING DESCRIBED REAL ESTATE:

THE SOUTH HALF OF THE NORTHEAST QUARTER (S/2 NE/4) OF SECTION 1, TOWNSHIP 24, RANGE 14, WOODSON COUNTY, KANSAS.

4.   THE STOCKEBRAND LEASE

AN OIL AND GAS LEASE DATED FEBRUARY 15, 1977, FROM NORMA J. WIMMER, ET AL, TO BERYL ASHLOCK, RECORDED IN BOOK 46 OF LEASES AT PAGE 660 IN THE OFFICE OF THE REGISTER OF DEEDS OF WOODSON COUNTY, KANSAS, COVERING THE FOLLOWING DESCRIBED REAL ESTATE:

THE NORTHWEST QUARTER (NW/4) OF SECTION 1, TOWNSHIP 24, RANGE 14, WOODSON COUNTY, KANSAS.

A-2

**Equipment**

| | |
|---|---|
| WINGRAVE PASTURE PUMP HOUSE | Woodson County, Kansas |
| JOHN WINGRAVE PUMP HOUSE | Woodson County, Kansas |
| STOCKEBRAND PUMP HOUSE | Woodson County, Kansas |
| WINGRAVE SEPARATOR | Woodson County, Kansas |
| WINDGRAVE TANK BATTERY | Woodson County, Kansas |
| WINDGRAVE WATER TANKS | Woodson County, Kansas |
| J WINDGRAVE SEPARATOR | Woodson County, Kansas |
| J WINDGRAVE TANK BATTERY | Woodson County, Kansas |
| J WINDGRAVE WATER TANK | Woodson County, Kansas |
| LIGHT SEPARATOR | Woodson County, Kansas |
| LIGHT TANK BATTERY | Woodson County, Kansas |
| STOCKEBRAND SEPARATOR | Woodson County, Kansas |
| STOCKEBRAND TANK BATTERY | Woodson County, Kansas |
| STOCKEBRAND WATER TANK | Woodson County, Kansas |
| KARMANN SEPARATOR | Woodson County, Kansas |
| KARMANN TANK BATTERY | Woodson County, Kansas |
| KARMANN WATER TANK | Woodson County, Kansas |
| WINGRAVE WATER TANK # 2 | Woodson County, Kansas |

A-3

Armada Midcontinent, LLC
Kansas Wells

| Lease Name | Well No. | API Number | Year Drilled | Depth | County | Well Type | Well Status |
|---|---|---|---|---|---|---|---|
| KARMANN | 01-10 | 15-207-27702-0000 | 2010 | 1082 | Woodson | OIL | PR |
| KARMANN | 02-10 | 15-207-27613-0000 | 2010 | 1095 | Woodson | OIL | PR |
| KARMANN | 03-10 | 15-207-27613-0000 | 2010 | 1095 | Woodson | OIL | PR |
| KARMANN | 04-09 | 15-207-27607-0000 | 2010 | 1095 | Woodson | OIL | PR |
| KARMANN | 05-09 | 15-207-27605-0000 | 2010 | 1100 | Woodson | OIL | PR |
| KARMANN | 08-10 | 15-207-27623-0000 | 2010 | 1095 | Woodson | OIL | PR |
| KARMANN | 36-10 | 15-207-27606-0000 | 2010 | 1095 | Woodson | OIL | PR |
| LIGHT | 1 | 15-207-21164-0000 | unknown | 1670 | Woodson | OIL | PR |
| Light | 1-11 | 15-207-27911-0000 | 2011 | 1655 | Woodson | OIL | PR |
| Light | 10-13 | 15-207-28645-0000 | 2013 | 1282 | Woodson | OIL | PR |
| Light | 2-12 | 15-207-28444-0000 | 2013 | 1635 | Woodson | OIL | PR |
| Light | 3-12 | 15-207-28445-0000 | 2013 | 1625 | Woodson | OIL | PR |
| Light | 4-12 | 15-207-28446-0000 | 2013 | 1620 | Woodson | OIL | PR |
| Light | 5-12 | 15-207-28447-0000 | 2013 | 1630 | Woodson | OIL | PR |
| Light | 6-13 | 15-207-28586-0000 | 2013 | 1277 | Woodson | OIL | PR |
| Light | 7-13 | 15-207-28587-0000 | 2013 | 1630 | Woodson | OIL | PR |
| Light | 8-13 | 15-207-28643-0000 | 2013 | 1630 | Woodson | OIL | PR |
| Light | 9-13 | 15-207-28644-0000 | 2013 | 1674 | Woodson | OIL | PR |
| STOCKEBRAND | 1 | 15-207-21163-0001 | unknown | 1626 | Woodson | SWD | AI |
| STOCKEBRAND | 1 W | 15-207-21200-0000 | unknown | 1626 | Woodson | OIL | IN |
| Stockebrand | 1-11 | 15-207-27902-0000 | 2011 | 1690 | Woodson | OIL | IN |
| Stockebrand | 2-12 | 15-207-28199-0000 | 2012 | 1678 | Woodson | OIL | PR |
| Stockebrand | 4-12 | 15-207-28145-0000 | 2012 | 1680 | Woodson | OIL | PR |
| WINGRAVE | 01-05 | 15-207-26920-0000 | 2005 | 1071 | Woodson | OIL | PR |
| WINGRAVE | 02-04 | 15-207-26849-0000 | 2004 | 1050 | Woodson | OIL | PR |
| WINGRAVE | 03-07 | 15-207-27233-0000 | 2007 | 1100 | Woodson | OIL | PR |
| WINGRAVE | 04-05 | 15-207-26885-0000 | 2005 | 1100 | Woodson | EOR | AI |
| WINGRAVE | 05-08 | 15-207-27394-0000 | 2008 | 1102 | Woodson | OIL | PR |
| WINGRAVE | 06-04 | 15-207-26848-0000 | 2004 | 1041 | Woodson | OIL | PR |
| WINGRAVE | 07-04 | 15-207-26850-0000 | 2004 | 1061 | Woodson | OIL | PR |
| WINGRAVE | 08-04 | 15-207-26852-0001 | unknown | 1087 | Woodson | EOR | AI |
| WINGRAVE | 08-09 | 15-207-27484-0000 | 2009 | 1072 | Woodson | OIL | PR |
| WINGRAVE | 1 | 15-207-02555-0001 | unknown | 1030 | Woodson | OIL | PR |
| WINGRAVE | 1 WE | 15-207-24918-0000 | 1984 | 1220 | Woodson | SWD | AI |
| WINGRAVE | 12-05 | 15-207-26923-0000 | 2005 | 1100 | Woodson | OIL | PR |
| WINGRAVE | 13-05 | 15-207-26886-0000 | 2005 | 1130 | Woodson | OIL | PR |
| WINGRAVE | 14-05 | 15-207-26924-0000 | 2005 | 1104 | Woodson | OIL | PR |
| WINGRAVE | 15-06 | 15-207-26978-0000 | 2006 | 1100 | Woodson | OIL | PR |
| WINGRAVE | 17 | 15-207-24452-0000 | unknown | 1060 | Woodson | EOR | AI |
| WINGRAVE | 18-97 | 15-207-26382-0000 | 1997 | 1100 | Woodson | OIL | PR |
| WINGRAVE | 19-97 | 15-207-26383-0000 | 1997 | 1100 | Woodson | OIL | PR |
| WINGRAVE | 20-97 | 15-207-26386-0000 | 1997 | 1080 | Woodson | EOR | AI |
| WINGRAVE | 21-00 | 15-207-26723-0000 | 2000 | 1120 | Woodson | OIL | PR |
| WINGRAVE | 21-07 | 15-207-27224-0000 | 2007 | 1120 | Woodson | OIL | PR |
| WINGRAVE | 22-00 | 15-207-26722-0000 | 2000 | 1120 | Woodson | OIL | PR |
| WINGRAVE | 22-06 | 15-207-27057-0000 | 2006 | 1110 | Woodson | OIL | PR |
| WINGRAVE | 22-07 | 15-207-27232-0000 | 2007 | 1128 | Woodson | OIL | PR |
| WINGRAVE | 23-06 | 15-207-27056-0000 | 2006 | 1110 | Woodson | OIL | PR |
| WINGRAVE | 24-08 | 15-207-27395-0000 | 2008 | 1101 | Woodson | OIL | PR |
| WINGRAVE | 25-09 | 15-207-27485-0000 | 2009 | 1112 | Woodson | OIL | PR |
| WINGRAVE | 26-09 | 15-207-27530-0000 | 2009 | 1101 | Woodson | OIL | PR |
| WINGRAVE | 27-09 | 15-207-27531-0000 | 2009 | 1101 | Woodson | OIL | PR |
| WINGRAVE | 28-10 | 15-207-27710-0000 | 2010 | 1110 | Woodson | OIL | PR |
| WINGRAVE | 30-09 | 15-207-27532-0000 | 2009 | 1080 | Woodson | OIL | PR |
| WINGRAVE | 31-09 | 15-207-27548-0000 | 2010 | 1115 | Woodson | OIL | PR |
| WINGRAVE | 32-10 | 15-207-27708-0000 | 2010 | 1108 | Woodson | OIL | PR |
| WINGRAVE | 33-10 | 15-207-27707-0000 | 2010 | 1102 | Woodson | OIL | PR |
| WINGRAVE | 34-10 | 15-207-27733-0000 | 2010 | 1062 | Woodson | OIL | PR |
| WINGRAVE | 35-10 | 15-207-27745-0000 | 2010 | 1062 | Woodson | OIL | PR |
| WINGRAVE | 8 | 15-207-02556-0001 | unknown | 1030 | Woodson | OIL | PR |
| WINGRAVE | WGG 1-05 | 15-207-26919-0000 | 2005 | 1090 | Woodson | OIL | PR |

A-4

| WINGRAVE | WGG 2-06 | 15-207-26975-0000 | 2006 | 1060 | Woodson | OIL | PR |
|---|---|---|---|---|---|---|---|
| WINGRAVE | WGG 3-09 | 15-207-27486-0000 | 2009 | 1062 | Woodson | OIL | PR |
| WINGRAVE | WGG 4-09 | 15-207-27487-0000 | 2009 | 1062 | Woodson | OIL | PR |
| Wingrave | 06-12 | 15-207-28486-0000 | 2013 | 1043 | Woodson | OIL | PR |
| Wingrave | 1 | 15-207-19282-0000 | unknown | 1016 | Woodson | OIL | PR |
| Wingrave | 22 | 15-207-19303-0000 | unknown | 1030 | Woodson | OIL | PR |
| Wingrave | 23 | 15-207-19304-0000 | unknown | 1030 | Woodson | OIL | PR |
| Wingrave | 24 | 15-207-19305-0000 | unknown | 1030 | Woodson | OIL | PR |
| Wingrave | 3 | 15-207-19284-0000 | unknown | 1360 | Woodson | OIL | PR |
| Wingrave | 36-10 | 15-207-27762-0000 | 2010 | 1082 | Woodson | OIL | PR |
| Wingrave | 37-10 | 15-207-27763-0000 | 2010 | 1082 | Woodson | OIL | PR |
| Wingrave | 39-10 | 15-207-27764-0000 | 2010 | 1082 | Woodson | OIL | PR |
| Wingrave | 40-11 | 15-207-27893-0000 | 2011 | 1102 | Woodson | OIL | PR |
| Wingrave | 41-11 | 15-207-27894-0000 | 2011 | 1102 | Woodson | OIL | PR |
| Wingrave | 42-11 | 15-207-27895-0000 | 2011 | 1102 | Woodson | OIL | PR |
| Wingrave | 43-11 | 15-207-27896-0000 | 2011 | 1102 | Woodson | OIL | PR |
| Wingrave | 45-11 | 15-207-27954-0000 | 2011 | 1096 | Woodson | OIL | PR |
| Wingrave | 46-11 | 15-207-27955-0000 | 2011 | 1096 | Woodson | OIL | PR |
| Wingrave | 47-11 | 15-207-27956-0000 | 2011 | 1070 | Woodson | OIL | PR |
| Wingrave | 48-11 | 15-207-27957-0000 | 2011 | 1070 | Woodson | OIL | PR |
| Wingrave | 49-11 | 15-207-27963-0000 | 2011 | 1090 | Woodson | OIL | PR |
| Wingrave | 50-11 | 15-207-27970-0000 | 2011 | 1068 | Woodson | OIL | PR |
| Wingrave | 51-11 | 15-207-27971-0000 | 2011 | 1070 | Woodson | OIL | PR |
| Wingrave | 52-11 | 15-207-27976-0000 | 2011 | 1102 | Woodson | OIL | PR |
| Wingrave | 53-11 | 15-207-27977-0001 | unknown | 1075 | Woodson | EOR | AI |
| Wingrave | 54-11 | 15-207-27983-0000 | 2011 | 1090 | Woodson | OIL | PR |
| Wingrave | 55-12 | 15-207-28073-0000 | 2012 | 1106 | Woodson | OIL | PR |
| Wingrave | 56-12 | 15-207-28078-0000 | 2012 | 1088 | Woodson | OIL | PR |
| Wingrave | 57-12 | 15-207-28084-0000 | 2012 | 1103 | Woodson | OIL | PR |
| Wingrave | 58-12 | 15-207-28085-0000 | 2012 | 1102 | Woodson | OIL | PR |
| Wingrave | 59-12 | 15-207-28121-0000 | 2012 | 1073 | Woodson | OIL | PR |
| Wingrave | 60-12 | 15-207-28313-0000 | 2012 | 1067 | Woodson | OIL | PR |
| Wingrave | 61-12 | 15-207-28430-0000 | 2012 | 1100 | Woodson | OIL | PR |
| Wingrave | 62-12 | 15-207-28464-0000 | 2013 | 1047 | Woodson | OIL | PR |
| Wingrave | 63-12 | 15-207-28465-0000 | 2013 | 1088 | Woodson | OIL | PR |
| Wingrave | 64-13 | 15-207-28663-0000 | 2013 | 1081 | Woodson | OIL | PR |
| Wingrave | 65-13 | 15-207-28664-0000 | 2013 | 1112 | Woodson | OIL | PR |
| Wingrave | 66-13 | 15-207-28666-0000 | 2013 | 1116 | Woodson | OIL | PR |
| Wingrave | 67-13 | 15-207-28667-0000 | 2013 | 1107 | Woodson | OIL | PR |
| Wingrave | 68-13 | 15-207-28712-0000 | 2013 | 1055 | Woodson | OIL | PR |
| Wingrave | 69-13 | 15-207-28731-0000 | 2013 | 1056 | Woodson | OIL | PR |
| Wingrave | 70-13 | 15-207-28732-0000 | 2013 | 1066 | Woodson | OIL | PR |
| Wingrave | 71-13 | 15-207-28735-0000 | 2013 | 1081 | Woodson | OIL | PR |
| Wingrave | 72-13 | 15-207-28736-0000 | 2013 | 1081 | Woodson | OIL | PR |
| Wingrave | 76-13 | 15-207-28803-0000 | 2013 | 1062 | Woodson | OIL | PR |
| Wingrave | 77-13 | 15-207-28802-0000 | 2013 | 1070 | Woodson | OIL | PR |
| Wingrave | WGG 5-11 | 15-207-27958-0000 | 2011 | 1072 | Woodson | OIL | PR |
| wingrave | 10 | 15-207-19291-0000 | unknown | 1029 | Woodson | OIL | PR |
| wingrave | 11 | 15-207-19292-0000 | unknown | 1024 | Woodson | OIL | PR |
| wingrave | 12 | 15-207-19293-0000 | unknown | 1023 | Woodson | OIL | PR |
| wingrave | 13 | 15-207-19294-0000 | unknown | 1063 | Woodson | OIL | PR |
| wingrave | 14 | 15-207-19295-0000 | unknown | 1063 | Woodson | OIL | PR |
| wingrave | 16 | 15-207-19297-0000 | unknown | 1036 | Woodson | OIL | PR |
| wingrave | 17 | 15-207-19298-0000 | unknown | 1040 | Woodson | OIL | PR |
| wingrave | 18 | 15-207-19299-0000 | unknown | 1030 | Woodson | OIL | PR |
| wingrave | 19 | 15-207-19300-0000 | unknown | 1030 | Woodson | OIL | PR |
| wingrave | 21 | 15-207-19302-0000 | unknown | 1030 | Woodson | OIL | PR |
| wingrave | 26 | 15-207-19307-0000 | unknown | 1030 | Woodson | OIL | PR |
| wingrave | 4 | 15-207-19285-0000 | unknown | 1036 | Woodson | OIL | PR |
| wingrave | 5 | 15-207-19286-0000 | unknown | 1184 | Woodson | OIL | PR |
| wingrave | 6 | 15-207-19287-0000 | unknown | 1030 | Woodson | OIL | PR |
| wingrave | 7 | 15-207-19288-0000 | unknown | 1016 | Woodson | OIL | PR |
| wingrave | 8 | 15-207-19289-0000 | unknown | 1048 | Woodson | OIL | PR |
| wingrave | 9 | 15-207-19290-0000 | unknown | 1062 | Woodson | OIL | PR |

A-5

<u>**EXHIBIT "B"**</u>

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

**[see attached]**

## ASSIGNMENT AND ASSUMPTION
## OF ASSET PURCHASE AGREEMENT

This Assignment and Assumption of Asset Purchase Agreement (this "Assignment") is made as of October 23, 2015, by and between JOHN E. GALEMORE, an individual ("Assignor"), and LAYMON OIL II, LLC, a Kansas limited liability company ("Assignee").

## RECITALS

A.   Assignor, as buyer, and Linda Payne (the "Seller"), on behalf of, and solely in her capacity as the duly appointed Chapter 7 Trustee for the bankruptcy estate of Armada Midcontinent, LLC, are parties to that certain Asset Purchase Agreement, dated as of October 22, 2015 (the "Purchase Agreement"), for the purchase and sale of the "Sale Assets," as defined in the Purchase Agreement.

B.   Section 15 of the Purchase Agreement provides that the Purchase Agreement may be assigned by Assignor, as buyer, to any assignee of Buyer, which shall be a U.S. corporation or limited liability company sufficiently capitalized to satisfy its obligations thereunder as determined by the Seller, and after any such assignment the Buyer shall have no further liability under the Purchase Agreement.

C.   Pursuant to Section 15 of the Purchase Agreement, Assignor desires to assign, and Assignee desires to assume, all rights and obligations of Assignor under the Purchase Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree to the above recitals and as follows:

1.   Assignment and Assumption.   Assignor hereby assigns to Assignee all of Assignor's right, title and interest in and to the Purchase Agreement and all documents and instruments executed pursuant thereto. Assignee hereby accepts the foregoing assignment and assumes and agrees to be bound by and perform all of Assignor's obligations, and be bound by all of Assignor's indemnities and liabilities under the Purchase Agreement and all documents and instruments executed pursuant thereto. Upon the assumption and assignment of the obligations hereunder by Assignee, Assignor shall have no further liability as the "Buyer" under the Purchase Agreement.

2.   Representations and Warranties of Assignee.   Assignee represents, warrants, and covenants to Assignor and Seller that:

a.   Assignee has unencumbered cash and other liquid assets of no less than $3.5 million as of the effective date of this Assignment;

b.   Within five (5) business days of the execution of this Assignment, Assignee shall provide to Seller (and Prosperity Bank) a letter from its bank confirming Assignee's financial ability to close the transaction under the Purchase Agreement;

DA-3389732 v4 2700061-00012

c.      Assignee is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Kansas and has now and will have as of the Closing all requisite right, power and authority to conduct its business as presently conducted and engage in and consummate the transactions contemplated hereby; and

d.      all action on the part of Assignee, its managers, officers, directors, and members necessary for the authorization, execution and delivery of this Assignment and the performance of all obligations of Assignee hereunder have or will have been taken as of the Closing.   This Assignment, when executed and delivered by Assignee, shall constitute valid and legally binding obligations of Assignee, enforceable against Assignee in accordance with their terms.

3.      Successors and Assigns.   This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective successors and assigns.

4.      Counterparts.   This Assignment may be executed in one or more counterparts, each of which, taken together, shall constitute one fully executed original.   Facsimile and scanned PDF signatures shall be binding for all purposes of this Assignment.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date first set forth above.

ASSIGNOR:                                        ASSIGNEE:

Laymon Oil II, LLC
a Kansas limited liability company

_____          By: _____
John E. Galemore                                      Kenneth W. Laymon, Managing Member

                                                 1998 Squirrel Road
                                                 Neosho Falls, Kansas 66758
                                                 laymon@kwicom.net

DA-3389732 v4 2700061-00012

United States Bankruptcy Court
Eastern District of Texas

In re:                                                                Case No. 15-41557-btr
Armada Midcontinent, LLC                                              Chapter 7
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0540-4        User: tyrones        Page 1 of 1          Date Rcvd: Nov 02, 2015
                           Form ID: pdf400       Total Noticed: 5

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Nov 04, 2015.
db             +Armada Midcontinent, LLC,    5220 Spring Valley Rd,    Suite 615,   Dallas, TX 75254-2431
6991873        +Prosperity Bank,    3802 Oak Lawn Avenue,    Dallas TX 75219-4614
7016818        +Prosperity Bank,    1330 S. Harvard Ave.,    Tulsa, Oklahoma 74112-5818
6991872         United States Attorney s Office,    110 North College Avenue, Suite 700,    Tyler TX 75702-0204

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
6991871         E-mail/Text: cio.bncmail@irs.gov Nov 03 2015 03:36:01    Internal Revenue Service,
                Special Procedures,   1100 Commerce, Room 951,    STOP 5025 DAL,   Dallas TX 75242
                                                                            TOTAL: 1

              ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr                  Prosperity Bank
                                                                   TOTALS: 1, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Nov 04, 2015                            Signature:  /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on November 2, 2015 at the address(es) listed below:
         Bill F. Payne    on behalf of Trustee Linda S Payne lgarner@moorefirm.com,
          TX21@ecfcbis.com;bpayne@ecf.epiqsystems.com
         David Weitman    on behalf of Creditor    Prosperity Bank david.weitman@klgates.com
         Jennifer Klein Ayers    on behalf of Creditor    Prosperity Bank jennifer.ayers@klgates.com,
          abigail.brown@klgates.com
         Linda S Payne    ecf@paynetrustee.com,   TX21@ecfcbis.com;lspayne@ecf.epiqsystems.com
         Mark A. Weisbart    on behalf of Debtor    Armada Midcontinent, LLC weisbartm@earthlink.net,
          TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;tarah_simmons@earthlink.net
         US Trustee    USTPRegion06.TY.ECF@USDOJ.GOV
                                                                            TOTAL: 6